# H. & T. C. R. R. Co. v. Joe Allen Myers.

(Case No. 4320.)

1. DAMAGES — RAILWAY COMPANY.— If one in the employ of a railway company, while in the discharge of his duty, is injured by the negligence or incompetency of his fellow servants, and it is made to appear that the company had not used reasonable care in selecting such fellow servants, or that, after being informed of their incompetency, it retained them in its service, it would be liable in damages for the injury sustained.

2. DAMAGES — CONTRIBUTORY NEGLIGENCE.— If one employed as a servant on a railroad, after having knowledge of the defective character of machinery which in his employment he uses, and, so using, is injured thereby, he cannot recover damage of the company for such injury.

3. FACT CASE.— See opinion for facts showing contributory negligence which precluded a recovery by a brakeman who was injured while engaged in coupling cars, while the fireman was acting as engineer in moving the train.

ERROR from Harris.     Tried  below  before  the Hon. James Masterson.

Joe Allen Myers, by his sister and next friend, Lou R. Myers, filed this suit against the Houston & Texas Central Railway Company, on the 1st day of June, 1874, to recover of that company damages sustained by him, because of personal injuries received on the 17th day of September, 1873, while in the employment of said company as a brakeman.

The petition charged that he was hurt while endeavoring to couple a train, and that he was so hurt because the said company had failed to furnish suitable links to make couplings, and because of the incompetency of the party who had charge of the engine at the time he was injured.  The plaintiff also alleged that the company knew before and at the time he was injured of the incompetency of its servant, and with this knowledge retained him in their employment.

Plaintiff alleged that he was injured on the 17th day of September, 1873, at Manor station, on the line of defendant's road, in Travis county, Texas, while he, in his capacity as a brakeman, was endeavoring to couple cars; that the injury was caused by an incompetent person having charge of the engine, and who suddenly, and without giving any signal, backed the train upon him; that the incompetency of the person having charge of the engine was then known to defendant, but not to plaintiff; and that another cause of his injury was, that he was

compelled to use a short, bent and defective link that was furnished to him by defendant with which to make the coupling, and that he did not at the time, until it was too late, know that such link was defective, but that such defect was known to defendant before and at the time plaintiff attempted to use it; that defendant failed and refused to provide suitable links with which to make couplings; that in consequence of said injury he had been put to great expense, in the sum of $700 for medical attention and medicine; and for nursing, in the further sum of $750; that he had been injured and his hand destroyed for life; that he had suffered much physical pain, for all of which he claimed damages in the sum of $30,000; that said injury was caused by no fault or negligence on his part, but that his injury was wholly caused by the fault and negligence of the defendant, and prayed for citation, and, upon hearing, for judgment for damages claimed, together with costs and for general relief.

Defenses filed were: general demurrer; general denial; and special answer, charging that if plaintiff was ever injured, it was by his own carelessness, and not by the fault, carelessness or negligence of defendant.

On August 11, 1874, the court made and caused to be entered the following order in substance:

"L. R. Meyers, guardian of the minor, J. A. Myers, has leave to make herself party plaintiff and leave to amend."

November 17, 1874, the plaintiff filed an amended petition, in substance, that his injury was caused by the gross carelessness and culpable negligence of defendant's servants; that they were totally incompetent, and that their incompetency was know to defendant before and at the time plaintiff was injured.

The case was tried on the 25th day of November, 1875, and resulted in a verdict and judgment in favor of appellee and against appellant for $10,000.

*Geo. Goldthwaite·* and *Baker & Botts,* for appellant.

*Collard & Field* and *Stuart & Barziza,* for appellee, in ·support of their position that the company was liable for failing to furnish a proper link for coupling, and on account of the incompetency of the fireman who undertook to act as engineer, cited Houston & Texas C. R. W. Co. *v.* Dunham, 49 Tex., 181; G. N. R. R. Co. *v.* Doyle, id., 190; G., H. & S. A. R. R. Co. *v.* Dillahunty, decided by this court March 26, 1880, and reported in Texas Law Journal, June 2, 1880; 1 Redfield's Law of R. W., 4th ed., p. 518; Wharton on Neg., pp. 206–224; Gilman *v.* Easton R. Co., 10 Allen (Mass.), 236; Gilman *v.* E. R. Co., 13 Allen (Mass.), 441; Faulkner *v.* Erie R. R. Co., 49 Barb. (N. Y.), 327; Chicago & G. E. R. Co. *v.* Hornly, 28 Ind., 30, 31; Ford *v.* Fitchburg R. R., 10 Mass., 260; Snow *v.* Housatonic, 8 Allen (Mass.), 441; Hand *v.* Ver. & Can. R. R., 32 Vt., 473; Smith *v.* N. Y. & H. R. R. Co., 6 Duer, 225; Chicago R. R. Co. *v.* Lovett, 45 Ill., 197; Flike *v.* The B. & R. R. Co., 53 N. Y., 549; Harper *v.* St.. Louis R. R., 47 Mo., 567; Saunry *v.* N. Y. Cent., 49 N. Y., 521; Greenleaf *v.* Ill. C. R. R. Co., 29 Iowa, 36–49; Gibson *v.* Pacific R. R., 46 Mo., 263.

They also contended that knowledge on the part of plaintiff that one of the links was defective, and that the train was not properly supplied with links, does not impair his right to recover, citing H. & G. N. R. R. Co. *v.*. Randall, 50 Tex., 260; Brandon *v.* Man. Co., 51 Tex., 121; Greenleaf *v.* D. & Sioux City R. R. Co., 33 Iowa, 35; Krory *v.* Chicago R., 32 Iowa, 357; Snow *v.* Housatonic R. R., 8 Allen, 441; Keegan *v.* W. R. R. Co., 8 N. Y., 175; Chicago & A. R. *v.* Shannon, 43 Ill., 338; Greenleaf. *v.* Ill. C. R. R. Co., 29 Iowa, 14.

Watts, J. Com. App.— By the pleadings the appellee sought a recovery upon the two grounds:

1st. That the injury was caused by the gross neglect

and incompetency of his fellow servants, and that the company knew of their said incompetency before the injury, and did not discharge them, etc.

2d.  That the injury was the direct cause of a defective coupling link that the company had furnished for use on its train, and that the company knew of the defect at and before the injury, but the defect was not known to him at the time.

As to the first branch of the case thus made, the principles of law necessary to be applied in the disposition thereof are well settled.   In operating trains upon a railroad, the company is bound to use reasonable care in selecting the servants to perform the various and often hazardous duties necessary to that end; and that each servant thus engaged has the unquestioned right to rely upon, and expect, that the company will use such care in selecting his fellow servants.   If the servant is injured, while in the discharge of his duty, by the negligence or incompetency of his fellow servants, and it is made to appear that the company had not used reasonable care in selecting such fellow servants, or, after being informed of their incompetency, retained them in its service, the company would be liable to its servant for the injury resulting from the neglect or incompetency of such fellow servants.

The appellee in his petition claimed that the injury resulted from the gross neglect and incompetency of his fellow servants, and that the company knew of their incompetency before the injury.

He claims that the injury occurred while he was in the discharge of his duty as brakeman, attempting to couple the cars constituting the train; and that it was caused by the fact that the engineer was not on the engine, and that the same was being operated by the fireman, who was incompetent for that business.

The testimony of appellee shows that the engineer oper-

ating the train was a good engineer, and competent for that business, and in this he is sustained by other evidence in the record; that the fireman was on the engine operating the same; that the engineer was not on the engine; that he, appellee, was trying to couple the cars with a defective link, when the fireman, without giving any signal, backed the engine rapidly upon him, and caught and mashed his hand between the cars. The other evidence in the record, and about which there is no conflict, shows that the engineer was standing on the ground near the engine, directing the fireman in its movement, and that the fireman was in this way operating the engine in making up the train; and that this was usual in switching.

Conceding that it was an act of negligence upon the part of the engineer to leave the engine in the hands of the fireman, to be operated by him, and that it was an act of negligence for the fireman to attempt to operate the same, still the testimony shows that the engineer selected by the company, and placed in charge of the engine, was a good and competent man for the business; and that this is the isolated act of negligence shown by the record, upon his part. Neither is there any complaint but that the fireman was a good and competent man for the business for which he had been selected, and to which he had been assigned by the company.

If, as claimed by appellee, the injury was the direct result of negligence of the engineer and fireman, then he not only fails to show the use of reasonable care upon the part of the company in selecting and retaining such servants, but he affirmatively shows that the engineer is a good and competent man for the business. Upon clear and well established principles of law, appellee could not recover for the injury on account of the neglect of his fellow servants, under the facts and circumstances of this case. See Railroad Co. v. Miller, 41 Tex., 273; Price v.

Navigation Co., 46 Tex., 535; Robinson *v.* Railway Co., id., 540; Pierce on Railroads, p. 359, note 7.

The company is required, by the plainest dictates of reason and rules of law, to furnish to its servants operating trains, good, sound and suitable machinery, apparatus and material necessary in the conducting of that business; and generally, the company is liable to its servants for injuries resulting from the use of defective machinery, apparatus or material in the discharge of their duty, provided the company knew, or could have known by reasonable care, that the same was so defective or unfit for the purposes for which it was furnished. This rule is subject to a qualification founded in reason, and amply sustained by authority, and that is, if the servant, after having knowledge of the defective machinery, apparatus or material, remains in the service and attempts to use the same, and is thereby injured, he cannot recover of the company for such injury. Pierce on Railroads, p. 379, note 4.

The appellee in his petition claims that the injury in this case resulted directly from his attempting to use, in the discharge of his duty, an imperfect and unfit coupling link that had been furnished by the company for that purpose; that he did not know of such defect until he was injured, but that the company did know of it, at and before the time of the injury.

This is the case made by the petitioner; but the testimony adduced to sustain the same makes a case quite different, in many of its features. The evidence establishes, beyond any doubt, that the appellee was injured in attempting to couple cars; that, in making the effort to couple the same, he was using the end link of a switch chain, and not a coupling link; that the link he was trying to use was entirely unfit for that purpose; that it was about six inches long and bent, whereas the coupling links were

straight and about ten inches long. There is no evidence in the record tending to show that the company had furnished or intended that it should be used as a coupling link, nor is there anything in the record showing but that the same was well adapted and entirely suited for the purpose for which it had been furnished by the company, to wit, the end link in a switch chain. The evidence clearly shows that, in the discharge of his duty as brakeman, he undertook upon his own responsibility and at his own peril to use the end of a switch chain instead of a coupling link, an instrument wholly foreign in its uses and purposes to that of a link for coupling freight cars. Appellee testifies that if he had been using a coupling link that he could have made the coupling without getting injured. In any view of the testimony, it is clear and beyond dispute that appellee's injuries resulted from his attempt to substitute the end of a switch chain for a coupling link, and use the same in a way and for a purpose entirely different from that for which it was furnished or intended to be used.

According to his own testimony, appellee showed a reckless disregard of his own personal safety in attempting to couple cars with the link he describes.

We are of the opinion that the judgment is not sustained by the evidence, and that the court erred in overruling appellant's motion for a new trial, and that the proper disposition of this appeal would be to reverse the judgment and remand the case.

REVERSED AND REMANDED.

[Opinion delivered April 26, 1881.]