THOMAS PARRISH, APPELLANT, VS. PENSACOLA AND ATLANTIC RAILROAD COMPANY, APPELLEE.

MASTER AND SERVANT—Liability of master for negligence of co-servant, appellate practice, amendment of pleading.

1. Prior to the enactment of Chapter 3744, Laws of 1887, a master was not liable or responsible to one servant for personal injuries received in the course of his employment through the negligence of a fellow servant, when engaged in a common work or in the same general undertaking.

2. The engineer, fireman, brakemen and shovelers on a gravel train engaged in loading, hauling and unloading gravel in repair of the road-bed are fellow servants engaged in the same common work, and the employer company, prior to the passage of said statute, was not liable to one of such shovelers for personal injuries received in consequence of the negligence of the engineer in putting the handling of his engine in the hands of his fireman who was either careless or unskilled in the management of such machines.

3. It is not necessary that all exceptions taken and noted during the

| 28 | 251 |
|----|-----|
| 28 | 131 |
| 28 | 353 |
| 28 | 754 |
| 28 | 251 |
| 29 | 254 |
| 29 | 506 |
| 29 | 654 |
| 28 | 251 |
| 31 | 172 |
| 28 | 251 |
| 32 | 49 |
| 32 | 226 |
| 32 | 495 |
| 28 | 251 |
| 34 | 11 |
| 28 | 251 |
| 33 | 283 |
| 28 | 251 |
| 35 | 87 |
| 28 | 251 |
| 39 | 552 |
| 28 | 251 |
| 44 | 600 |
| e44 | 717 |
| 46 | 575 |
| e47 | 193 |
| 28 | 251 |
| 51 | 287 |
| 28 | 251 |
| j52 | 72 |
| j52 | 78 |
| j52 | 82 |
| j52 | 83 |
| j52 | 87 |
| j52 | 89 |
| j52 | 91 |
| 28 | 251 |
| 53 | 424 |
| 54 | 95 |
| 54 | 158 |
| f55 | 299 |
| 28 | 251 |
| 58 | 368 |

progress of a trial should be included in a motion for new trial as grounds therefor, in order to have them reviewed by this court, when they are otherwise properly disclosed by the bill of exceptions.

4. The embodiment of a motion for new trial into a bill of excepceptions is not evidence of the truthfulness of any statement of fact set forth in such motion, but is evidence only that such a motion in the form presented was in fact made before the court. And when such motion sets out or quotes a charge purporting to have been given or refused by the court, the giving or refusal of which is not evidenced anywhere else in the record, or in any other manner except by the transcription thereof into such motion, this court cannot consider such charge for the want of proper evidence that it was in fact given or refused.

5. Section 2, Chapter 3431, Laws of Florida, 1883, does not change this rule, but simply enlarges the time within which exceptions may be taken to charges actually given. The meaning of said act is, that when a charge actually given is embraced in a motion for a new trial it shall be taken as an exception to such charge, whether exception was taken thereto at the time it was given or not, but it does not constitute such a motion evidence of the truthfulness of anything contained therein. The fact that such charge was actually given must be evidenced otherwise than by being incorporated in such motion, either by being included as a part of the bill of exceptions, or by the endorsement of the judge thereon, over his signature, as being "given" or "refused," as is provided in Chapter 2096, Laws of 1877, otherwise such charge cannot be considered by this court.

6. When a new cause of action, or new ground of recovery not included in a declaration in a civil action, is developed out of the testimony at the trial, that would necessitate an amendment of the declaration so as to include such additional ground and authorize a recovery thereon, it is not the duty or province of the judge presiding, under the provisions of section 97, page

Thomas Parrish v. P. & A. R. R. Co.—Argument of Counsel.

834, McClellan's Digest, *sua sponte*, to make, suggest or order such amendment to be made, but the statute comtemplates and requires an application to be made to the court for such amendment by the party desiring the same.

7. There can be no recovery upon a cause of action, however meritorious it may be, or however satisfactorily proved, that is in substance variant from that which is pleaded by the plaintiff.

Appeal from the Circuit Court for Jackson county.

The facts of the case are stated in the opinion of the court.

*D. L. McKinnon* and *John W. Malone* for Appellant.

*W. A. Blount* for Appellee.

There is no error assigned in the action of the court upon the pleadings, but the only errors insisted upon are those which are alleged to have occurred upon the trial and upon the overruling of the motion for a new trial.

Of the errors complained of, all cannot be insisted upon here.

1. In order that errors occuring upon trial may be reviewed upon appeal, it is necessary that a motion for a new trial shall be made so that the court below may have an opportunity of correcting its error. Volz vs. Newbert, 17 Ind., 187; 12 Ind., 675; Lures vs. Botte, 26 Ind., 343.

This is not by virtue of the code cited. See the section cited on sec. 352; 2 R. S., p. 117. Detheredge vs. Montgomery, 4 Bush., 46; Kanards vs. North, 14 Mo., 615; Dickenson vs. Cook, 3 Duer, 324; Neil vs. Daniel, 4 Nev., 436.

And it follows, of course, that no errors not relied upon in a motion for a new trial can be insisted upon on appeal.

Now, the first and second assignments of error were not included in the motion for a new trial, and cannot be insisted upon here. Horton vs. Wilson, 25 Ind., 316; Daniel vs. Gray, 19 Ark., 121.

2. The three "additional grounds" of the motion for a new trial cannot be urged here because these grounds were filed after the expiration of the four days allowed by statute in which to file the reasons, and to make a motion for a new trial.

The second and third "additional ground" cannot be considered for the further reason that the charge incorporated in the bill of exceptions does not contain the rulings of the court set forth in them. McNeal & Roulhac vs. State, 17 Fla., 198; Dougherty vs. Whitehead, 31 Mo., 255.

3. The special charges given by the court cannot be assigned as error because the giving of them was not relied upon as error on the motion for a new trial, and for the further reason that they were not excepted to separately.

4. No error in the charge of the court can be relied upon for it was not excepted to at the trial nor incorporated into the motion for new trial in the manner provided by statute. Carter vs. State, 20 Fla , 754.

The only portions sought to be incorporated are those portions set forth in the "additional grounds" all of which were filed too late and two of which did not appear in the charge at all.

If the court refuses to consider any of these matters, there is nothing left for its consideration but the refusal to grant the motion for a new trial and the grounds available in that are the 2nd, 5th, 6th and part of the first.

But *ex abundentia cantela*, I discuss all the assignments of error.

First. The proof offered to be made by Chappell was properly excluded. Whatever may have been its effect if testified to by Eubanks, coming from Chappell it was mere hearsay.

It was not the declaration of an agent in the line of his duty. He was not an agent but a mere employe, and it was not in the line of his duty but a statement of a fact in his own past life. If it was sought to be introduced to show that Chappell had knowledge of Eubanks' unfitness and hence was negligent in intrusting him with the engine, the answer is :

No unfitness of Eubanks was shown affirmatively

and the accident raised no presumption of it. 20 Mich., 105.

If such unfitness was shown by all the evidence, it was not shown at the time the proffer of this testimony was made, and there being no effort to correct it with other testimony, which would make it material, it was in the discretion of the court to refuse to admit it. Its admission would only have tended to show negligence in Chappell, who was, as I shall show, a fellow servant with the plaintiff, and its admission would not have benefitted the plaintiff.

Second. Nor was there error in the exclusion of what Johns said to Chappell. It was mere hearsay of Nelson, and came within none of the exceptions under which hearsay is sometimes admitted. It was not of the *res jestae*, for it was a declaration of what had occurred at some indefinite period before the accident. It was not the declaration of an agent but the recital of a fact which Nelson was called upon to retail at second hand. Even as a recital it was of the fact that Johns had expressed an opinion without giving the facts back of that opinion and upon which it was based.

If sought to be introduced as a warning to Chappell not to take which was negligence, the answer is the same as that made to the attempt to introduce the testimony of what Eubanks said to Chappell. Besides it was not negligence of Chappell to refuse to accept a

warning, the reasons for which do not appear to have been given to him.

And finally, if admitted, it would not have benefitted plaintiff because it only tended to show the negligence of his fellow servant.

Third. I discuss the principles upon which the charge was founded under the fifth assignment of error it being more convenient and systematic to there discuss them.

Fourth. This assignment cannot be considered because it was not embraced in the motion for a new trial, and was therefore waived.

Authorities ante.

But each of the special charges is correct.

1. This was correct. 49 Mo., 167; 10 Allen, 233; 68 Ill., 545; 186 B., 797.

2. This was correct. Wood's Master and Servant, p. 831.

3. This was correct. Notice to a fellow servant would not be notice to a master. The failure of the fellow servant to notify the master would be negligence of a fellow servant for which the master would not be liable. 32 Mich., 510.

4. This was correct. 9 Exch., 223; 25 N. Y., 566.

5. This was correct. Citation Wood's Master and Servant, p. 806, n., 805.

17

6. This was correct. It simply stated the ordinary rule of contributory negligence.

7. This was correct. It merely applies the rule already enunciated.

Fifth. 1st, 2nd and 3rd grounds of the motion for a new trial. Chappell, Eubanks and plaintiff were in the same department of service, all engaged in the repair of the road, and each having not only the same general but the same specific object in view. But if they were not in the same department then the only question here presented is whether Chappell or Eubanks and the plaintiff, not being in the same department of service, although under a common master and engaged in a common work in the same place were fellow servants. The contention of the appellant that Chappell was superior to Eubanks and therefore not a fellow servant, has no foundation of fact to stand upon, for the evidence shows no such superiority or control. The case of Chicago R. R. Co. vs. Ross, 112 U. S., upon which appellant relies, even if it be good law, does not touch the question here because it was a decision determining the effect of superiority or control of one servant over another, and not touching the question whether to exempt the master from liability the fellow servants must work in the same departments of service.

There are some cases which hold that the servants must be under the same immediate control in the same department; but they are opposed to the great weight of authority and to reason.

The cases of R. R. Co. vs. Fort, 17 Wall., and Packet Co. vs. McCue, 17 Wall., generally cited as sustaining this view, are said not to do so. Randall vs. Baltimore, &c., 109 U. S.

This latter case states the true doctrine that in order to constitute employes fellow servants it is not necessary that they should be under the same immediate control, for the negligent servant was an attache on one train and the injured person of another.

As illustrating the same doctrine and enforcing the contention of the appellees, the following cases decide that the persons named were fellow servants : Track repairer and engineer, 8 Ohio St., 249; track repairer and train hands, 10 Cush., 228; track repairer and train hands, 4 Metc., 49; laborer and engineer, 17 N. Y., 134; laborer on gravel train and engineer, 23 Penn. St., 384; 13 Ind., 366; engineer and Switchman, 68 Ill., 545; laborer on gravel train and conductor, V. A. & E. R.; 5 A. & E. R. cases, 578.

Persons operating different train. 25 N. Y., 562; 17 Ohio St., 197; 32 Mich., 510; 3 Cush., 270.

See as analogous to facts in this case : Houston R. R. R. Co. vs. Myers, 55 Texas, 110.

The charge of the court embracing the law as above set forth was correct. If there was error, it was in favor of the appellant in the distinction drawn between the negligence of a conductor or an engineer of a passenger train and the conductor and engineer of this general train.

A verdict for the plaintiff could only have been sustained upon the ground that the defendant was negligent in employing or retaining Chappell or Eubanks, or that Chappell or Eubanks were not fellow servants with the plaintiffs and were negligent. There is no evidence of the former and under the law Chappell and Eubanks were fellow servants of the plaintiff.

Fifth ground. The plaintiff can only recover for the breach of duty alleged in the declaration. The breach alleged was the employment of Eubanks, who was known to be incompetent and the negligence of Chappell. The duties of which these acts were alleged to be in violation were entirely distinct from the duty to supply a sufficient number of employes. Though this may have been a meritorious cause of action, yet it was not declared upon and could not be a ground of recovery. 74 Ala., 430; 1 Chitty Pl., 392.

There was no application to amend, but the plaintiff proceeded with the trial relying upon his declaration as it stood, and cannot now say that he did not state such a case as he ought to have stated to cover his facts.

Sixth ground. This ground and the affidavit in support of it does not meet the requirements of a successful motion for a new trial, on the ground of any newly discovered evidence. It is not newly discovered evidence of which the plaintiff was in ignorance, but evidence of which he knew, but in the absence of which he

chose to take his chances. It was evidence to the main point in the issue which he himself had made, and he was the judge of whether he could safely go to trial without it. If he erred he cannot ask the court to correct his error.

The existence of the evidence was known, but no motion for a continuance was made to enable him to procure it. The affidavit does not state positively that Johns would testify to the facts stated but merely that plaintiffs believes that he would so testify. The new trial might be granted to allow this testimony of Johns to be adduced, and he might not be able to give any such testimony. The general rule is to require the affidavit of the witness whose evidence has been newly discovered. Hill. on New Trials, p. 514, secs. 35-37.

And while this was impracticable in this case, yet it shows that the court will require a positive showing of the existence not only of the witness but of the testimony.

It does not appear that the testimony was first discovered after the trial, but on the contrary it appears that it was discovered "since or on the trial." If discovered at the trial its existence cannot be alleged as a ground for a new trial. Hilliard on New Trials, p. 496 n., 5; 3 Graham & Wat. on New Trials, p. 1028; 4 Call, 450.

Plaintiff could have upon proper showing, procured

a continuance or an adjournment under the statute, McClellan's Digest, p. 836, sec. 107.

He chose to take the risk and he must abide the result.

Seventh ground. This ground was interposed too late. But if in time the charge was correct as heretofore shown.

Eighth ground. Not only was this ground too late, but it appears only in the motion for a new trial, and not in the charge. But if it can be considered, the charge was correct as I have shown.

Ninth ground. This cannot be considered for the same reasons which debar consideration to the 8th. But if it can be considered, the charge is correct.

TAYLOR, J.:

Thomas Parrish, the appellant, brought suit against the Pensacola & Atlantic Railroad Company to recover damages for an injury sustained by him resulting from the negligence and incompetency of the person in charge of one of the defendant's locomotives. The declaration alleges that said company employed one Chappel as engineer, and one Eubanks as a fireman to aid and assist Chappell in running and operating a steam locomotive on said railroad; that said Eubanks was inexperienced, incompetent and unfit to act in the capacity of fireman or engineer, or to aid and assist in the control or management of a locomo-

tive; that plaintiff was an employee of the defendant company; that while standing on a car of the gravel train which was stationary on the track, throwing dirt therefrom in compliance with his orders, that said Eubanks, a fireman, and acting as engineer, negligently and unskillfully, and without giving any warning to the plaintiff, backed the defendant's steam locomotive against the gravel train with such force and violence that plaintiff was thrown from the car on which he was standing, engaged in throwing dirt, down and upon the track, and his left arm caught between the car wheel and the railroad track and was greatly injured and mangled; that the incompetency of said Eubanks was known to the defendant company before and during the time of his employment and at the time of the injury to plaintiff, or might have been by the use of ordinary diligence. The defendandant plead "not guilty," and that the injury to plaintiff was occasioned by his contributory negligence. The plaintiff joined issue on the pleas. The plaintiff introduced James Campbell, who testified as follows: "I know the plaintiff; was present in charge of the gravel train of the defendant at the time he was wounded, which I think was about the 16th of June, 1883, in this county, between Cottondale and Davis' Mill. I did not see him when he fell and received his wounds, as I was signaling the fireman in charge of the gravel train, to stop the engine, as it was coming back too fast, but saw him a few minutes afterwards, after he had been taken up, and saw that he was hurt on the

arm, but did not examine the extent of the injury; he was sent back to Marianna to a doctor, who took off his arm. The plaintiff was shoveling dirt off of one of the flat cars at the time the engine struck the train. The bump of the engine was severe enough to drive the whole train, six or eight flat cars loaded with dirt, about twenty-five or thirty feet. I saw that the fireman was coming back with too much force to make a coupling, and I called out to him to reverse the engine, which he did, but too late to prevent the bump. The engine then started forward, and I ran and jumped aboard of her. When I saw the engine coming back with such force I hallooed to Daffin, the brakeman, who was to make the coupling, to get out from between the cars, that the engine was coming back with too much force, and he jumped out before she struck; don't know why the fireman let the engine come back with such force; suppose she got away with him. The fireman had been sent me by the defendant about six weeks before; don't know whether he ever fired on or had charge of a locomotive engine before. The fireman's name was Eubanks, and he is now dead. A fireman can learn to handle an engine so as to switch off and couple up cars in a day or two if apt at learning, but would require six weeks to six months as fireman before they would be competent to take charge of an engine to run it; didn't leave Eubanks in charge of the engine very often, because he had not been with me long, and I didn't know that it would be safe; but was compelled to do so on this occasion, as the defen-

dant had not furnished me with a conductor, and I had to perform the duties of engineer and conductor both, which required me sometime at the rear end of the train, while the fireman would have to be left in charge of the engine. That was the case when the plaintiff received his injury. I was on the ground for the purpose of giving signals to the fireman to take a car from the side track and hitch it on the gravel train, when the gravel hands were at work. It is a usual thing for engineers to leave their trains in charge of the fireman when there is no conductor on the train and there is coupling to do. I had entire charge of the train at the time, and also of the train hands, who consisted of Eubanks as fireman, and Daffin as brakeman. I had no charge or control over the plaintiff or any of the gravel hands or their boss, Capt. Johns. They were under the charge of Capt. Johns, and neither Capt. Johns nor any of the hands under him had anything to do with the controlling of the train. I was at the time, am now, and have been ever since, in the employ of the defendant." On cross-examination the witness testified: "I have known good engineers to come back with as much force, when making a coupling, when their engines would be out of order, and sometimes when they were not out of order, have known couplings to be made when the engines came back that hard, but it is not usual; can't say that it was always caused by negligence; it came back harder than if I had had charge of the engine. I had let Eubanks have charge of the engine occasionally before

but for a short time.  The engine was in good order at
the time; nothing the matter with her."

E. Daffin, also introduced by the plaintiff, testified
as follows : "Was brakeman on the gravel train of
defendant at the time the plaintiff lost his arm, and
had been for two or three months.  The train hands
consisted of Chappell, who had charge of the engine
and train, Eubanks as fireman, and myself as brake-
man.  The plaintiff had been working with the gravel
hands for a week or two before he got his arm broke.
At the time he got his arm mashed he was standing on
a flat car towards the rear of the train throwing off
dirt.  The engine had been uncoupled from the train
and was bringing in a car from the side track to at-
tach to the train, and I was standing ready to make
the coupling.  When the engine started back with
such force Chappell hallooed to me to get out, and I
did so without making the coupling; when the engine
struck it knocked the train back thirty or forty feet,
and plaintiff fell under the cars and got his arm broke
just below the shoulder.  He could not speak at first,
but afterwards complained and groaned as if he was
suffering very much.  He was brought back to Ma-
rianna and the doctors took off his arm just below the
shoulder.  Eubanks very seldom had charge of the en-
gine.  When the car bumped, the engine started for-
ward and Chappel ran and jumped on it and stopped
it.  The bump was a much harder one than when
Chappell handled the engine himself."

Henry Nelson, a witness for plaintiff, testified as follows: I was one of the gravel hands on the gravel train of defendant at the time plaintiff got his arm broke. The plaintiff was also in the employ of defendant at the time as a gravel hand on the train. We were getting one dollar a day each. There was a number of gravel hands on the train at the time and all were getting one dollar a day. We had just got to the place with a train load of dirt, and we all, including the plaintiff, were throwing dirt off the train. The engine was detached from the train that we were unloading, and went over on a side track and got another car, and was in the act of coupling onto the train, but came back with such force that it knocked many, if not all, of us down, and the plaintiff fell backwards, striking his head against the end of the car in front of the one he was standing on, and fell with his arm resting on the track, and car wheels ran over it and mashed it. When we got to the plaintiff he was lying where he fell, and could not speak for awhile. His head was hurt and scarred also; he seemed to suffer a great deal, and was brought to town where the doctor took off his arm. Mr. Eubanks was in charge of the engine at the time, and Mr. Chappell was on the ground. Eubanks had not been fireman on that train long; very seldom saw the fireman in charge of the engine, if ever before. Mr. Chappell had nothing to do with the gravel hands; Mr. Johns was in charge of them. We, including plaintiff, were day laborers on the road. When the engine came back it was much

harder than usual.    The flat which the plaintiff was on was near the rear end of the train of eight or ten cars; don't remember the exact number.    The plaintiff was bending down throwing off dirt when he was knocked off.    Plaintiff had been working on the road about two weeks."

The plaintiff, Thomas Parrish, testified as follows: "I am now about thirty-five years old; was working in the defendant's employ as a day laborer at one dollar a day in June, 1883, when I lost my arm; had been at work about two weeks; Capt. Johns was my boss at the time; he was in charge of all the gravel hands, and I was one of the number; it was sometime in June, 1883, that we were unloading a gravel train that was loaded with dirt; I was standing near the front end of one of the rear flats shoveling off dirt when the engine came back against the train and knocked me down backwards, my head striking against the end of the flat immediately in front of the one I was on, stunning me, and my left arm falling in such a position on the track that the wheel ran over it and mashed it just below the shoulder; they brought me back to Marianna, and Dr. West cut off my arm; I suffered a great deal from the loss of my arm and lick on my head, and suffer from it now; my health was very good previous to the injury, seldom ever sick; now sometimes I am scarcely able to get about; I get so weak and my head swims; I cannot earn as much as twenty-five cents a day regularly now.    For a year and a half before I began to work for defendant, I was

getting thirty dollars a month as fireman at a saw mill, and on a steam boat, and was getting a dollar a day at the time I was hurt; had farmed in Leon county, Florida, with my brother previous to that, making three or four bags of cotton clear every year. Mr. Eubanks, the fireman, had charge of the engine when I was hurt; he left the engine, which was detached from the train, come back so hard that it knocked many, if not all, that were on the train down. Mr. Chappell, the engineer, was on the ground some distance from the engine when he signalled the fireman to back up to couple. Was sick five or six months before I was able to do any work. I had only been in the defendant's employ about two weeks. The defendant offered me fifty dollars and transportation to Tallahassee if I would receipt them in full for the loss of my arm, which I refused to do, and they left me to shift for myself about a month after I lost my arm."

The defendant introduced Dr. West, who testified as follows: "I am a practicing physician, and was called to see the plaintiff when he was wounded in June, 1883. His head wound was not serious. The arm wound was very painful and necessitated amputation, and I took off his arm just below the shoulder; such wounds shock the nerves, impair vitality and affect locomotion.

The foregoing comprises the entire testimony in the case.

The court charged the jury as follows: "That a fellow servant is one engaged with another under a com-

mon master, and in the same common employment, so that they are brought in contact with each other, notwithstanding they are subject to the orders and under the exclusive control of separate bosses or foreman and in different work in the same service; for illustration; if one were engaged as a common laborer to work on the road bed or gravel train he could not be a fellow servant with the engineer or conductor of a passenger train, but would be a fellow servant with all employed on the roadbed or gravel train, if his employment was in a common work and brought him in immediate contact with them and risk through them, although working under the orders of a different boss or foreman in the said common work and in different sorts of work. If, therefore, you believe from the evidence that the employment of the plaintiff brought him in contact with Eubanks and Chappell, or either of them, as being engaged in a common work, then he is a fellow servant with them, and cannot recover of the defendant for injuries received by the negligence of the said Eubanks and Chappell, or either of them, in the management and control of the gravel train."

The judge then gave the following special charges requested by the defendant's counsel : " If the plaintiff does not prove that the defendant was negligent in the employment of Eubanks as fireman, any proof that he was careless or negligent does not entitle the plaintiff to recover unless he also proves that the defendant was aware of such negligence or unskillfulness in time to remove him before the accident in question

occurred.  But one single act of negligence or exhibition of incompetency would not make it the duty of the defendant to remove him unless such act or exhibition was of such a character to make it imprudent for a reasonable man to retain him.  In order that the plaintiff may recover because the defendant failed to remove a fellow servant after knowledge of his unfitness, it must be shown by the plaintiff that some one whose duty it was, or who had the authority, to remove the unfit employe had a knowledge of his unfitness and failed to remove him.  Knowledge of a fellow servant would not be knowledge of the defendant.  But even if the defendant had such knowledge by its proper officers, yet the plaintiff cannot recover unless he was without such knowledge himself.  If he knew of the unskillfulness or carelessness or unfitness of the fireman and yet continued to work in such a position that his safety was jeopardized by a recurrence of said carelessness or unskillfulness, then he cannot recover.  But it is not necessary to debar him from recovering that he should actually have known of such unfitness, for if he had the same means of knowing that the defendant had, he cannot recover for injury resulting from such unfitness; nor can he recover if his conduct immediately preceding the accident was such that a reasonable and prudent man would not have adopted it and such conduct contributed to the occurrence of the injury.  If the jury find that the injury was occasioned by the assumption by the fireman of a position for which he had not been employed by defendant and was

unfit, then, in order to recover, the plaintiff must show that the defendant knew of such assumption and unfitness prior to the injury, and aquiesced in such assumption, or did not take adequate steps to prevent its continuance or recurrence, and such knowledge or acquiesence, or inaction on the part of the engineer of the same train, is not sufficient to show that the defendant had knowledge, or acquiesced, or wrongfully failed to act."

In the course of the trial plaintiff offered to prove by the witness Chappell that Eubanks had told witness when he came to fire for him that he had "never fired on a locomotive, or run on one before," to which defendant's counsel objected; the court sustained the objection, and plaintiff's counsel excepted. Plaintiff offered to prove by one Daffin that, as the plaintiff fell, Capt. Johns said to Chappell: "I told you to stop putting your engine in charge of that firemen, now you have killed a man," to which defendant objected; the court sustained the objection, and plaintiff excepted. The jury found a verdict for the defendant.

The plaintiff moved the court for a new trial on the following grounds : 1st. The verdict of the jury was contrary to the evidence, the law and the charge of the court; 2nd. The verdict of the jury was against the weight of the evidence; 3rd. The charge of the court was contrary to law; 4th. The charge of the court was calculated to mislead the jury in reference to a knowledge of the incompetency of the fireman, Eubanks, on

the part of the defendant; 5th. Because the evidence shows that the defendant was guilty of contributory negligence in not furnishing a sufficient number of men to run the train, which developed upon the trial, but on account of it not being alleged in the declaration could not recover upon said ground; 6th. Because plaintiff did not know the whereabouts of one Johns, who was in charge of plaintiff as boss at the time of the injury complained of, by whom he believes he will be able to prove that the defendant had notice of the incompetency of said Eubanks, and he has now ascertained where said Johns is and believes that he can procure his attendance or his testimony at the next term of the court, as shown by affidavit on file. Additional grounds; 7th. That the judge charged the jury as follows: "That a fellow servant is one engaged with another under a common master, and in the same common employment, so that they are brought in contact with each other, notwithstanding they are subject to the orders, and under the exclusive control, of separate bosses or foremen, and in different work in the same service; for illustration if one were engaged as a common laborer to work on the road bed or gravel train he could not be a fellow servant with the engineer or conductor of a passenger train, but would be a fellow servant with all employed on the road bed or gravel train, if his employment was in a common work and brought him in immediate contact with them and risk

through them, although working under the orders of a
different boss or foreman in the said common work
and in different sorts of work. If, therefore, you be-
lieve from the evidence that the employment of the
plaintiff brought him in contact with Eubanks and
Chappell, or either of them, as being engaged in a
common work, then he is a fellow servant with them,
and cannot recover of the defendant for injuries received
by the negligence of the said Eubanks and Chappell, or
either of them, in the management and control of the
gravel train," which said charge is believed to be
erroneous; 8th. That the judge further charged the
jury as follow : " That though the evidence discloses
the fact that the defendant was negligent in not having
sufficient employes to manage and control the gravel
train, and such negligence caused the injuries of which
plaintiff complains, yet you cannot find for the plain-
tiff on this account because there is no claim for such
negligence in plaintiff's declaration," which said charge
is also believed to be erroneous; 9th. That the said
judge further charged the jury as follows : "That the
onus is on the plaintiff to prove that the defendant was
guilty of negligence in the employment of Eubanks as
fireman on the gravel train, as the law presumes that
it did its duty," which said charge is also believed to
be erroneous. The court denied the motion.

The appellant assigns errors as follows : 1st. The
court erred in refusing to permit plaintiff to prove by
witness Chappell that Eubanks, who was dead, had

told him that he had never fired on a locomotive engine before; 2nd. The court erred in refusing to permit plaintiff to prove by Henry Nelson that Captain Johns said, "Chappell, I told you to stop putting your engine in charge of that fireman; now you have killed a man;" 3rd. The court erred in giving the charges set forth in the motion for a new trial; 4th. The court erred in giving each of the special charges asked by the defendant's counsel; 5th. The court erred in refusing to grant the motion for a new trial.

Counsel for the appellee insists that the first two errors assigned cannot be enquired into by this court, for the reason that they were not included and made a part of the motion for a new trial. This court in the case of Dupuis vs. Thompson, 16 Fla., 69, has settled this point; the court said: "In some of the State courts, and in some of the courts of the United States, it has been held that a motion for new trial is a waiver of the exceptions taken to the rulings during the progress of the trial. Before the act of 1853 (Chap. 521, Laws, sec. 4, p. 840, McClellan's Digest,) the decision of the Circuit Court upon a motion for a new trial was held by this court to be a matter of discretion not subject to review. Carter vs. Bennett, 4 Fla., 283. This statute having given this right, it has been the constant practice of this court to review such decisions, and in connection with them exceptions to matters occurring during the progress of the trial."

Counsel for appellee also insists that the "three ad

ditional grounds" of the motion for a new trial cannot be reviewed by this court because these grounds were filed after the expiration of the four days allowed by the statute for filing reasons and to make a motion for a new trial. The record is silent as to the time when these additional reasons or grounds for a new trial were filed, and in fact as to when any of them were filed. The records shows, however, that the court entertained the motion, and after consideration, denied it. We think we can reasonably infer from this action of the court, and the failure of the record to show any objection to the court's entertaining the motion that they were filed within the time prescribed by law.

It is objected further by the counsel for appellee that the second and third "additional grounds" (numbered 8th and 9th in the motion for new trial) cannot be considered for the further reason "that the charges incorporated in the motion for new trial do not contain the rulings of the court set forth in said additional grounds." Where the giving or refusal of a charge is relied upon as error, the fact that such charge was given or refused must be made to appear affirmatively, either by being transcribed into that part of the bill of exceptions that is usually devoted to the exposition of the charges given or refused; or by being copied into the record sent here and evidenced by the endorsement of the judge thereon over his signature as being "given" or "refused," in compliance with Chapter 2096, Laws of 1877; otherwise the giving or refusal of such charges

cannot be assigned as error here, or considered by this court.

The embodiment of a motion for a new trial into a bill of exceptions is not evidence of the truthfulness of any statement of fact set forth in such motion, but is evidence only that such a motion in the form presented was in fact made before the court. And when such motion sets out and contains as a ground a charge purporting to have been given or refused by the court, the giving or refusal of which is evidenced nowhere else in the record and in no other manner except by the transcription thereof into such motion, this court can not consider such charge for the want of proper evidence that it was in fact given or refused. Section 2 of Chapter 3431, Laws of 1883, does not change this rule, but simply enlarges the time within which exceptions may be taken to charges actually given. The meaning of said act is, that when a charge actually given is embraced in a motion for new trial it shall be taken as an exception to such charge, whether any exception was taken thereto at the time it was given or not; but it does not undertake to constitute such a motion as evidence of the truthfulness of anything contained therein. There is no evidence in this record that the charges numbered 8th and 9th in the additional grounds to the motion for new trial were ever in fact given to the jury, and cannot, therefore, be considered. Carter vs. State, 20 Fla., 754; Boswell vs. State, *Ibid*, 869; Broward vs. State 9 Fla., 422.

The propositions of law announced in the instruction given to the jury in this case and assigned as error here presents the question: Whether the master is liable to one employee, who has sustained personal injury, in and about the work for which he was employed, through the negligence or carlessness of another employee, or fellow-workman, of the same master, and engaged in the same common undertaking. The answer to this, as an abstract proposition, cannot now be said to be an open question; but it is well settled by a long line of decisions both in England and in nearly all the American States, that the master is not liable or responsible to one servant for personal injuries received in the course of his employment through the negligence of a fellow-servant when engaged in a common work. In Priestly vs. Fowler, 3 Messon & Welsby, 1, decided in 1837, where the servant sought to recover damages of his master (a butcher) for personal injuries received through the breaking down of an overloaded van driven by a co-servant; which seems to be the first case in England where such liability was attempted to be established, Lord Abinger says: "The mere relation of the master and the servant never can imply an obligation on the part of the master to take more care of the servant than he may reasonably be expected to do of himself. He is, no doubt, bound to provide for the safety of his servants in the course of his employment, to the best of his judgment, informatian and belief. The servant is not bound to risk his safety in the service of his master, and may,

if he thinks fit, decline any service in which he reasonably apprehends injury to himself; and in most of the cases in which danger may be incurred, if not in all, he is just as likely to be acquainted with the probabilities and extent of it as the master." In Farwell vs. B. & W. R. R. Co., 4 Met., 49, decided in 1842, which seems to be the first case of this kind in Massachusetts, where a locomotive engineer sought to recover damages for the loss of his hand in the derailment of his engine, caused by the carelessness of a switch tender, also in the employ of the company, in leaving a switch open. Chief-Justice Shaw delivering the opinion of the court says: "Where several persons are employed in the conduct of one common enterprise or undertaking, and the safety of each depends much on the care and skill with which each other shall perform his appropriate duty, each is an observer of the conduct of the others, can give notice of any misconduct, incapacity, or neglect of duty, and leave the service, if the common employer will not take such precautions, and employ such agents as the safety of the whole party may require. By this means, the safety of each will be much more effectually secured, than could be done by a resort to the common employer for indemnity in case of loss by the negligence of each other. Regarding it in this light, it is the ordinary case of one sustaining an injury in the course of his own employment, in which he must bear the loss himself, or seek his remedy, if he have any, against the actual wrong-doer." The same doc-

trine has been adhered to in that state in repeated decisions. In Wright vs. N. Y. Cen. R. R. Co., 25 N. Y., 562, decided in 1862, where the plaintiff, a brakeman, was injured in a collision of two trains alleged to have been been brought about by the negligence of the defendant in employing an incompetent engineer, the court says: "A master is not responsible to those in his employ for injuries resulting from the negligence, carelessness or misconduct of a fellow servant engaged in the same general business." The same court (Ibid) says: "Neither is it necessary, in order to bring a case within the general rule of exemption, that the servants, the one that suffers and the one that causes the injury, should be at the time engaged in the same operation or particular work. It is enough that they are in the employment of the same master, engaged in the same common enterprise, both employed to perform duties and services tending to accomplish the same general purposes as in maintaining and operating a railroad, operating a factory, working a mine, or erecting a building." In Murray vs. South Carolina R. R. Co., 1 McMullan (So. Ca.), 385, said to be the first case announcing the rule either in England or America, in which the plaintiff, a fireman on an engine, lost his leg in the derailment of the engine on coming in collision with a horse on the track, alleged to have been occasioned by the negligence of the engineer in not stopping the engine, the court say : " The verdict establishes the fact that the plaintiff's injury was the effect of the negligence of the engineer, and then the ques-

tion arises whether the railroad company is liable to one servant for an injury arising from the negligence of another servant. The business of the company is the transportation of goods and passengers. Its liability in these respects is, in general, well defined and understood by the profession; and if the plaintiff's case came within any of the principles applicable to these cases, we should have no difficulty in deciding it. The application of steam power to transportation on railroads is of recent origin, but the principle by which the liability of a carrier is fixed and ascertained, is as old as the law itself. There is nothing in the fact, that the defendant is a corporation, except that of necessity it must act altogether by agents. The liability is precisely the same as if the defendant was an individual acting by the agency of others. The principle is the same, whether you apply it to a railroad, a steamboat, a wagon, a stage coach, or a ship. If this plaintiff is entitled to recover, I can see no reason why the owner of any of the above modes of conveyance should not be liable under the same circumstances. If the owner of a wagon should employ two men, one to drive and the other to load, and either of them should so negligently perform his work as to injure the other, the owner of the wagon would be liable. The principle will extend to all the vocations of life wherein more than one person is employed to effect a single object; and a new class of liabilities would arise, which I do not think has ever heretofore been supposed to exist.'' The same court (Ibid) says: "With the plaintiff

the defendants contracted to pay hire for his services. Is it incident to this contract that the company should guarantee him against the negligence of his co-servants? It is admitted he takes upon himself the ordinary risks of his vocation; why not the extraordinary ones? Neither are within his contract, and I can see no reason for adding this to the already known and acknowledged liability of a carrier, without a single case or precedent to sustain it. The engineer no more represents the company than the plaintiff. Each in his several department represents his principal. The regular movement of the train of cars to its destination, is the result of the ordinary performance, by each, of his several duties. If the fireman neglects his part, the engine stands still for want of steam; if the engineer neglects his, everything runs to riot and disaster. It is, on the part of the several agents, a joint undertaking, where each one stipulates for the performance of his several part. They are not liable to the company for the conduct of each other, nor is the company liable to one for the misconduct of another," The same general rule has ever since been adhered to in the South Carolina courts. This generally established rule has been recognized by the Supreme Court of the United States in Hough vs. Railway Co., 100 U. S., 213, and in Randall vs. B. & O. R. R. Co., 109 U. S., 478, and in Chicago, M. & St. P. Ry. Co. vs. Ross, 112 U. S., 377; also by the courts of Indiana, Iowa, Illinois, Tennessee, Ohio, Wisconsin, Pennsylvania, Maryland, Texas, California and Missouri. When ap-

plied to this case it will be found that the principles of law here announced forbid a recovery on the part of this plaintiff upon the case as made by his pleadings and proofs. In his declaration the plaintiff distinctly alleges that "the said defendant put the said James Chappell *as engineer*, and the said Thomas Eubanks *as fireman*, in the control, management and charge of a steam locomotive engine on their said railroad, with instructions to run and operate the same; and on the first day of July, 1883, while the plaintiff was standing upon a flat car attached to a gravel train which was stationary on the defendant's said railroad in the county of Jackson aforesaid, engaged in throwing dirt therefrom in accordance with orders and directions from the said defendant, the said *Thomas Eubanks* carelessly, negligently, unskilfully, and without giving any signal or warning whatever to the plaintiff or any one else, backed the defendant's steam locomotive engine, of which he then and there had the sole control, management and charge against the said gravel train with great force and violence, and thereby threw the plaintiff with great force and violence from the car upon which he was standing and engaged in throwing dirt as aforesaid, down and upon the road bed and track," &c., whereby the plaintiff had his arm crushed, necessitating subsequent amputation. The declaration expressly states further "that on the day and year last aforesaid the said James Chappell carelessly and negligently left the said steam locomotive engine, and put the said Thomas Eubanks in the sole

control, management and charge thereof, and directed him, the said Eubanks, to back the said steam locomotive engine and couple it with said gravel train. And the plaintiff further saith that it was the constant practice and custom of the said James Chappell to entrust the steam locomotive engine to the sole control, management and care of *his fireman* to couple it with cars, and the defendant had full notice and knowledge thereof, and plaintiff avers that the injuries which he received at the time and in the manner aforesaid resulted from the negligence, inexperience, incompetency and unfitness of the said Thomas Eubanks to meet the responsibility for which he was employed as aforesaid by the said defendant, and carelessness and negligence of defendant in employing and retaining in its employment the said Thomas Eubanks *as fireman* as aforesaid with knowledge of his inexperience, incompetency and unfitness aforesaid and without fault of plaintiff." The gist of this declaration, though somewhat contradictory in its terms, is, that the defendant employed James Chappell *as engineer* of this engine and train, and Thomas Eubanks *as fireman* thereof ; that Chappell, who was employed by the defendant to perform the functions of *engineer* carelessly and negligently deserted *his especial duties*, delegating them to Eubanks, who was employed by the defendant company in the capacity of, and to perform the duties of *fireman* on the same engine ; and that in consequence of Eubanks' incompetency and want of skill *as an engineer*, in which capacity he was acting for the time being, the

injury resulted to the plaintiff. When we turn to the proofs, in which there is no conflict, we find that the plaintiff, at the time of the injury, with other operatives, was in the defendant's employ, in charge of and under the control of a section boss, one Capt. Johns, all of them engaged with this engine and a train of flat cars in charge of Chappell as engineer, with Eubanks as fireman, and one Daffin as brakeman, in the common work of hauling dirt or gravel and filling it in on the defendant's road bed, while the plaintiff, with other employes, under Capt. Johns as section boss, were up on the flat cars shoveling off or unloading dirt therefrom, Chappell, the engineer, deserted his post on the engine, and negligently put Eubanks, his fireman, to perform his (the engineer's) duty in uncoupling the engine from the cars and running in on a siding to switch out another car to be also attached to the train; in returning, Eubanks, through unskilfullness or carelessness, (the proof does not show which) came back with too great velocity, whereby the car on which plaintiff was at work, was so suddenly and violently struck as to force it back 25 or 30 feet, whereby plaintiff was thrown off, his arm crushed under the wheels, etc. There is no effort either in the declaration or in the proofs to show that Chappell was not a competent man for the position or duties of *engineer*, or that the engine or cars were defective in any way. And although there is a distinct allegation in the de-

claration that Eubanks was incompetent and unfit for the position of *fireman*, and that the defendant was negligent in employing him and in retaining him *in that capacity*, yet there is not a word of proof or any effort at any proof even tending to show that Eubanks was not perfectly competent to perform the duties *of fireman* for which, from the proof, he was employed by the defendant company. There is no proof that he was employed by the defendant for any other duties than those of fireman. The plaintiff's case, as it appears to us from the record, has been predicated upon the alleged negligence of the defendant company in employing and retaining Eubanks, an incompetent servant, for the duties of *fireman* on its engine; but when the case comes to the proof, all of it, without conflict, makes out a case, not of incompetency of the *fireman*, as such, but of *neglect of duty* on the part of the *engineer*, as to whom there is no allegation or proof of any lack of perfect *competency*. The proof is, that the plaintiff, with the other laborers engaged in unloading the cars, were under the control of Capt. Johns, the section boss, and that all of them, with the engineer, fireman and brakeman, with this engine and train of cars, were there together engaged in one common enterprise, that of hauling dirt with the train and filling it in on the road bed. Under the established rules of law they were all fellow servants. There is no allegation or proof that the defendant failed in its

duty to furnish proper machinery with which to work; and there is no proof that for the respective duties and functions that they were each employed to perform by the defendant, there was any incompetency on the part of the fireman or engineer, or any other co-employe connected with the plaintiff in his work there and then. The case as made by the pleadings and proof is clearly one where the plaintiff's injury has resulted from the negligence of his co-employe—the engineer—in deserting his proper post to which he had been assigned by the defendant, and in resigning his duties temporarily to another who had been engaged by the defendant for entirely different and far less responsible duties. The proof is that Chappell, the engineer, had no authority or control over the plaintiff or the other persons engaged in loading or unloading the gravel from the cars, but was there in the capacity of engineer or manipulator of the engine and cars that were engaged *as an appliance* in carrying on the one common work in which they were all engaged, and in which each one had his respective duty to perform. The duty of Chappell, the engineer, was to manipulate the engine. He neglected and abandoned that duty to another, without the knowledge or consent, so far as the proof shows, of the defendant or any of its authorized agencies having the powers or authority of the defendant as principal in such matters, whereby the injury resulted to the plaintiff. The practical manipulation of the engine was not one of the special or abso-

lute duties that the defendant company was obligated
or bound to perform in person, but was a duty that
they were not only authorized, but *required*, to dele-
gate to one *competent and skilled* in the handling of
such machines, and having done this, so far as anything
to the contrary in the allegations or proofs appears,
they have done their duty, and are not liable for that
engineer's neglect or carless performance of *his* duty
unless they were retaining him, at the time of the ac-
cident, after knowledge of gross or habitual neglect or
careless performance of his duty. As there is no alle-
gation or proof of any negligence on the part of the
defendant in employing or retaining this engineer in
its employ, there can be no recovery upon that theory
of negligence. Though it is alleged in the declaration
with some ambiguity, that Eubanks was employed by
the defendant to operate or control the engine, or was
ordered by the defendant to operate it on the occasion
of the accident to the plaintiff, there is no proof what-
ever tending to establish either phase of this allegation;
on the contrary the proof shows that so far as the de-
fendant is involved in Eubank's temporary handling of
the engine, it had no instrumentality therein whatso-
ever, but employed him solely as, and assigned to him
only the duties of a fireman. The conclusions we have
reached as to the non-liability of the defendant, from
the testimony, are fully sustained in the following par-
allel cases: P. Ft. Wayne & Chicago Ry. Co. vs.
Lewis, 33 Ohio St., 196, where the plaintiff, a brake-

man, in consequence of the negligence of both the conductor and engineer in failing to give the usual signal for starting the train, was thrown from the car by a sudden and unexpected jerk of the train forward, whereby his left arm was cut off by the car wheels, the fireman on the engine being at the time of the accident in sole charge of the engine, it was held that the engineer, fireman and injured brakeman were fellow-servants ; all being employes of one master, and engaged in carrying out a common object, and that the defendant was not liable to the one employe for an injury caused by the negligence of his co-employe. In Gillshannon vs. Stony Brook R. R. Co., 10 Cush, (Mass.), 228, the plaintiff was an ordinary laborer on the defendant's road bed at a place several miles from his home. Each morning and evening, with the company's consent, and free of charge for the ride, he rode with the other laborers on a gravel train of the defendant to and from the place of labor. While thus on the way to their work a collision took place with a handcar on the track, through the negligence of those having charge of the gravel train, and the plaintiff was thrown off and run over by the train. There was some evidence also tending to show that the train was not sufficiently supplied with brakeman. It was held that the defendant was not liable, the injury to the plaintiff having been occasioned by the negligence of a co-employe. In O. & M. R. R. Co. vs. Tindall, 13 Ind., 366, a set of hands were at work for the railroad

19

company gravelling a portion of the track. The gravel was conveyed from the pit to the place where it was used upon the road by means of a train of gravel cars. The same hands loaded and unloaded the cars, and rode back and forth on the cars between the places of loading and unloading. While thus employed, the train, through the carelessness of the engineer, ran against an ox, was thrown off the track, and Tindall was killed outright. He being a single man of only about eighteen years of age, and his father being dead, his mother brought suit against the company for his death. It was held, that the defendant company was not liable, the injury being caused to one servant by the negligence of a co-employe of the same master. In Chicago & Alton R. R. Co. vs. Keefe, 47 Ill., 108, Keefe was at work on a construction train, unloading railroad iron while so engaged, the conductor signaled the engineer to run his train on a siding to get out of the way of an approaching passenger train. The engineer, without giving the preliminary signal, as required by the rules, started his engine, whereby Keefe was thrown from the platform car where he was at work and injured. It was held that the company was not liable, the injury being the result of the negligence of a co-employe. In St. L. & S. E. Ry. Co. vs. Britz, 72 Ill., 256, Britz was employed as a laborer on the defendant company's construction train, used in hauling gravel, and his principal work was that of shoveler, in loading and unloading the cars. In the performance of this work it was necessary that he should ride

on the train to and from the places of loading and un-
loading ; and while thus engaged, the train on which
he was, through the negligence of the engineer or
brakeman, ran into a passenger train standing on the
track, whereby he was thrown from the car and re-
ceived injury.   It was held that  he, the engineer and
brakeman were co-employes engaged in the same work,
and that the company was not liable for the negli
gence of one of such co-servants.   H. & T. C. R. R. Co.
vs. Myers, 55 Texas, 110, is also analagous in its facts
to the case under consideration ; and it is there held
that the company was not liable.   The charges given
by the court to the jury are excepted to and assigned
also as error.   Without re-quoting them or discussing
them further than is already done in the discussion of
the principle already commented upon, it is sufficient
to say that we have carefully considered each instruc-
tion in connection with the facts proved, and our con-
clusion is that they state the law fairly and accurately,
and are fully sustained in the principles they announce
by the great weight of the authorities.

It is also assigned as error :   "Because the evidence
showed that the defendant was guilty of negligence in
not furnishing a sufficient number of men to run the
train, which developed at the trial, but on account of
its not being alleged in the declaration, could not re-
cover upon said ground."   When this fact was devel
oped on the trial no application on behalf of the plain-
tiff was made to the court for leave to amend the de-

claration ; but still, it is insisted here that under sec. 97, p. 834 McClellan's Digest, it was the duty of the judge presiding, *sua sponte*, to amend in this particular. This position is untenable and cannot be sustained. The language of the section of our statute above referred to is as follows : "It shall be the duty of the courts of this State, and of every judge thereof, at all times to amend all defects and errors in any proceeding in civil causes, whether there is anything in writing to amend by or not, and whether the defect or error be that of the party applying to amend or not ; and whether the defect or error be that of *the party applying to amend* or not ; and all such amendments shall be made with or without costs, and upon such terms as to the court or judge may seem fit ; and all such amendments as may be necessary for the purpose of determining in the existing suit the real question in controversy between the parties shall be so made, *if duly applied for.*" The statute clearly contemplates that an *application to amend* shall be made, but even if it did not we would be loth to adopt a construction of it that would impose upon the court in addition to his duties as judge, the further duty of acting as the attorney for both plaintiff and defendant in every cause; and that, besides, would give to the judge the power in any cause to come in, of his own motion, with unwanted amendments that might conflict seriously with the matured plans for the conduct of the cause mapped out by the attorney in charge of the case in whose supposed favor the unasked amendment was

made. Such a practice would be altogether inconsistent with all established rules touching the relative functions of judges and attorneys. There being no allegation in the declaration that the injury to the plaintiff was the result of negligence on the part of defendant in failing to supply its train with a sufficient number of hands, no testimony upon that point was either pertinent or admissible, and no recovery, in the absence of such allegation, could have been had. In Kennedy Bros. vs. M. & G. R. R., 74 Ala., 430, the court says : ''There can be no recovery upon a cause of action, however meritorious it may be, or however satisfactorily proved, that is in substance variant from that which is pleaded by the plaintiff.'' It is also urged : '' That the court erred in refusing to allow the plaintiff to prove by James Chappell that Eubanks had told him (Chappell) when he came to fire for him, that he had never 'fired on a locomotive or run on one before.' '' As before shown, there was no proof that Eubanks was incompetent for the simple unskilled duties of *fireman* on a locomotive, and the case, as made by the proofs, shows that the injury to the plaintiff did not result from any incompetency or neglect of Eubanks in the discharge of his duties as *fireman*, but resulted from his incompetency or carelessness in attempting to exercise the functions of *engineer*, for which latter duties he was never employed by the de fendant, but was put to perform them by Chappel, the real engineer, which action was negligence in Chappell; so the question, as to whether Eubanks ever had any

prior experience *as fireman* on a locomotive, was immaterial, and there was no error in its exclusion.

The refusal of the court to allow the plaintiff to prove by the witness Henry Nelson that he heard Capt. Johns, the section boss, at the time of the accident, say to Chappell, the engineer: " I told you to stop putting your engine in charge of that fireman; now you have killed a man," is also assigned as error. We do not think there was error in excluding this evidence. It is open first to the objection of being hearsay, but even if it were not subject to this objection, its admission would have been nothing more than an accumulation of evidence to establish the negligence of Chappell, the engineer, in putting his fireman in his place to discharge his duties; the evidence of which was abundant, but for which, as we have seen, the defendant company is not liable.

Upon a review of the whole case we are unable to detect any such error as would warrant us in disturbing the verdict of the jury; and the judgment of the court below is, therefore, affirmed.

It will be proper to say that we have examined Chapter 3744 Laws of Florida, approved June 7th, 1887, the second section of which seems to change entirely the rules of law discussed in this opinion, so as to render the master liable for an injury to one employe by the negligence of a co-employe, where there is no fault on the part of the one injured; but the provisions of this statute cannot affect this case, the whole occurrence

involved therein and the trial of the issues presented thereby having transpired long prior to the enactment of this statutory change of the law.