TEXAS AND PACIFIC RAILWAY COMPANY v. JOE JOHNSON.

No. 400.—Decided May 18, 1896.

89 519
90 305

**1. Master and Servant—Servant's Unfitness—Master's Knowledge.**

While the servant assumes risk of injury from negligence of a fellow-servant whose unfitness is known to him, he is not, as is the master, charged with such knowledge on the subject as by care he could have acquired. The master being under a duty to inform himself of the character of his servants, proof of their general bad reputation suffices without proof of his actual knowledge.

**2. Same—Servant's Knowledge.**

The servant is under no duty to examine into the character of servants employed to work with him and he assumes the risk of their unfitness only where he is shown to have knowledge of it. Proof of notorious unfitness of fellow-servant will not alone establish such knowledge on his part. See opinion for facts held insufficient to show such knowledge.

**3.  Same—Equal Opportunities for Knowledge.**

The fact that master and servant had equal opportunities for knowing the unfitness of the culpable fellow-servant does not prevent the servant from recovering. Ignorance of such servant's notorious unfitness was, of itself, negligence in the master but the same proof did not establish notice of such unfitness to the servant.

**4.  Same—Harmless Error.**

Where a conductor was injured by a collision caused by negligence of a reckless fellow-servant in charge, as extra conductor, of a following train, and there was no evidence of actual knowledge by plaintiff of the unfitness of his fellow-servant, unless by inference from the fact that such recklessness was notorious, it was not material error that a charge instructed the jury that plaintiff did not, if he knew the co-servant's unfitness, assume the risk of injury thereby unless he also knew that such co-servant was on the occasion in question in charge of the train following his own.

Whether knowledge of this particular fact was necessary to an assumption of the risk is not decided; since the charge was not prejudicial to defendant in the absence of competent proof of plaintiff's knowledge of his fellow-servant's unfitness.

CERTIFICATE of dissent from Court of Civil Appeals, Second District, in an appeal from Tarrant County.

Upon the opinion of a majority of that court the judgment was reversed and cause remanded for error in giving the charge copied in this opinion, Justice Hunter dissenting.  On motion of appellee the point of dissent, as disclosed in the opinion, was thereupon certified to the Supreme Court.  The opinion states the case:

*Stanley Spoonts* and *Thompson,* for appellant, on motion for rehearing, argued that there was evidence of actual knowledge by plaintiff of Roberts' recklessness; also, that plaintiff was chargeable with knowledge by reason of Roberts' notorious recknessness and their acquaintance, they cited: McKinney on Fellow Servants, sec. 10; Farwell v. Railway, 9 Met., 49; Wood on Mast. and Servt., sec. 433; Chapman v. Railway, 55 N. Y., 586; Railway v. Whitmore, 58 Texas, 276.

Plaintiff, if he knew of his co-servant's recklessness, assumed the risk though he did not know him to be in charge of the following train: Railway v. Somers, 71 Texas, 700; Green v. Cross, 79 Texas, 130; Wood on Mast. and Servt., sec. 422; McKinney on Fellow Servts., sec. 88; Am. and Eng. Encycl. Law, vol. 14, 842-53; Railway v. Murphy, 53 Ill., 336; McDermott v. Railway, 87 Mo., 285; Schultz v. Railway, 67 Wis., 616; Laning v. Railway, 49 N. Y., 512; Hall v. Nay, 144 Mass., 186; Lovejoy v. Railway, 125 Mass.. 79.

The motion for rehearing was overruled.

*Wynne, McCart & Booty,* for appellee.

BROWN, ASSOCIATE JUSTICE.—Joe Johnson was in the employ of appellant as conductor on a freight train and at the time of his injury was engaged in the discharge of his duty as conductor on a freight train going west from Fort Worth.  The injury occurred on the second day of June, 1891.  The train on which Johnson was acting as conductor stopped at a water tank for the purpose of taking water, and stayed there the usual and necessary time.  When about to leave the tank the train on

which Johnson was, was run into from the rear by another freight train, which was known as the second section of the first train. The second section was in charge of one C. S. Roberts as conductor.

We copy the following from the conclusions of fact as found by the Court of Civil Appeals:

"3. That the regular conductor of section No. 2 of train 17 was one Conrad, but for some reason he did not go out on his train that night, as was expected, but one Roberts was put in charge of the train as conductor, and plaintiff did not know that Roberts was put in charge of the second section which was to follow him that night, and could not have known thereof by the use of ordinary diligence, as he left Fort Worth with his train some time before Roberts was put in charge of section two of the train.

"4. That Roberts was in the employment of defendant as a brakeman, but had been, in May, 1890, appointed also to the position of 'extra conductor.' An extra conductor, as proven by the defendant's officers, is a man that runs other conductors' trains when they are laying off, sick, or something of that kind, or might be called upon to act upon any train in the absence of the regular conductor. An extra conductor has no regular caboose crew. The plaintiff, at and before the accident, knew that Roberts had been appointed extra conductor, and was liable to be put in charge of trains at any time.

"5. The plaintiff testified that he did not know, and had not been informed prior to the time of the injury, that Roberts was a reckless, incompetent conductor; but the evidence showed that such was Roberts' general reputation among the employees of appellant on the division of the road where plaintiff and Roberts were both engaged, upon the testimony of which employees plaintiff mainly relied to show this general reputation, and that plaintiff and Roberts were personally acquainted. Whether he had such knowledge then was a controverted issue in the case.

"7. Plaintiff's injury was caused by the negligence and recklessness of Roberts, conductor on the second section of the train, in failing to have his train under control, as required by defendant's rules, when he ran into the water station.

"9. We find that, at the time Roberts was placed in charge of the second section of train 17, the division superintendent of defendant, who had control over the appointment and discharge of conductors and train men on that division of defendant's road, knew that Roberts was a reckless conductor, and had known it for at least a month, and had only a month or two previous thereto investigated charges against him for recklessly running into the caboose of a train at Coal Mine Station, and found him guilty, and suspended him from service for fifteen days; but we also find that at the time he was appointed as extra conductor, in May, 1890, neither the defendant nor its officers knew of his incompetency or recklessness as a conductor, and that at that time he had made no reputation as a conductor, either good or bad."

The majority of the Court of Civil Appeals held that the judgment of the District Court should be reversed and the cause remanded; stating their reasons for such conclusion in the following language:

"The court in effect charged that if the defendant, with knowledge of Roberts' incompetency, retained him in its service, and the injury inflicted upon the plaintiff was brought about by that incompetency, the company would be liable, even though the plaintiff knew of such incompetency, provided he did not further know, or by the use of ordinary diligence, was unable to ascertain that the incompetent conductor was in charge of the train following that under the control of the plaintiff.

"The majority of this court are of opinion that the concluding proposition of this instruction is erroneous; that it vitiates the charge and requires a reversal of the judgment, as in all probability it seriously affected the verdict of the jury."

Justice Hunter of the said court dissented from the opinion of the majority, which dissent has been certified to this court.

The points of law involved in the certificate of dissent arise upon the latter part of the charge as quoted above, and for convenience we will state the questions as follows:

First—Was there any evidence before the jury in this case which would have authorized them to find that before the accident Johnson knew of the recklessness and incompetency of Roberts as a conductor? If not, was there error in the charge of the court, if it be error, such as to justify a reversal of the judgment of the District Court?

Second—If Johnson knew that C. S. Roberts was employed by appellant as brakeman and also as extra conductor, and knew that Roberts was reckless and incompetent as a conductor, but did not know that he, Roberts, was to go on the road as conductor that night, did Johnson assume the risk of injury which might occur from the incompetency of Roberts as conductor in case he should be put in charge of the train which was to follow Johnson's train?

There is no question that Roberts, the fellow-servant from whose negligence the injury occurred, was incompetent and unsafe as a conductor, and that the railroad company knew the fact when it sent him on this trip, and it must be held liable to Johnson for the injury received by him in the discharge of the duties of his employment by reason of the negligence of Roberts while performing his duties as an employee of the railroad company, unless it has been proved that Johnson knew of the unfitness and reckless character of Roberts before the accident. Railway v. Mussette, 86 Texas, 720; Railway v. Farmer, 73 Texas, 88; Beach on Contributory Negligence, secs. 127-128.

Mr. Beach in his work referred to, in section 127, uses this language: "The responsibility of a master to each of his servants for the competency and fitness of the other servants he employs to work with him is in every way analogous to the duty he owes them in regard to the machinery and all the other instrumentalities he furnishes for the performance of the work." The servant is not required to investigate as to the condition of

the machinery furnished him, nor is he required to examine into the character of the servants employed to work with him; but he may, and generally must, act upon the assumption that the master has performed his duty in selecting and retaining such servants. McKinney on Fellow Servants, sec. 95; Rolling Stock Co. v. Wilder, 116 Ill., 100; Railway v. Myers, 55 Texas, 114.

In Railway v. McNamara, 59 Texas, 258, in which the injury was caused by defect of the track, the injured party being a brakeman upon the train, the court said: "The master is chargeable with knowledge which he might have acquired by the exercise of due care, the same as if he actually possessed it, whereas the servant has the right to assume that all necessary examinations have been made by the master, and is not required, either in person or by another employed by him for the purpose, to examine the machinery as to fitness and sufficiency." In another part of the same opinion, after speaking of the duty of the master to keep the track in good order and the diligence required of the employee, the court said: "The law requires no such extraordinary vigilance and care of servants, nor charges them with knowledge of facts which they could have learned only by their exercise."

It is claimed that Johnson had equal opportunity with the railroad company to know the character of Roberts, and for that reason he cannot recover. This claim is based upon the testimony of Roberts' general reputation among the employees of the defendant engaged in service with him. In order to charge the railroad company with notice of Roberts' unfitness for his work, by proving that it might have known of such fact if it had used ordinary care, the plaintiff proved that the general reputation of Roberts among his fellow-servants was that of a reckless, careless and dangerous conductor. This evidence was admissible against the defendant for the reason that it was under obligation to inquire into the character of its servant, Roberts, and its failure to learn of his general reputation among its employees was of itself negligence. Mr. McKinney, in his work on Fellow Servants, sec. 90, says: "Evidence of general reputation is admissible to prove the unfitness of a fellow servant, and ignorance of such general reputation on the part of the master is itself negligence, in a case in which proper inquiry would have obtained the necessary information, and where the duty to inquire was plainly imperative." It was not necessary for Johnson to prove that he did not know of the incompetency of Roberts; the burden rested upon the defendant to make that proof. Yet, if the evidence introduced by Johnson of Roberts' general reputation was such as would have authorized the jury to find that plaintiff knew of Roberts' recklessness and unfitness, it would have the same effect as if introduced by the defendant, and no more. In other words, it was incumbent upon the defendant in that case to show Johnson's knowledge of Roberts' character, unless it appeared from the testimony offered by Johnson himself.

The difference in the effect of general reputation upon the rights and duties of the railroad company and Johnson lies in this, that, it be-

ing the duty of the former to inform itself of the character of its servants, the proof of general bad reputation fixed the liability of the company without proving knowledge of the reputation or of the character of the servant, but, as to the servant Johnson, the proof was simply a means by which it might be shown that he knew of the character of Roberts as a conductor. The general reputation might be proved in order to show this knowledge, but it must go further, and either show that he knew of that reputation, or place him in such relation thereto by his surroundings that a jury could conclude that he did know of the fact. For example, if the proof had shown that the reputation of Roberts had been discussed in the presence of Johnson, under such circumstances as that a man with ordinary sense of hearing must have heard the conversation, then the jury might conclude that he did hear it, and that he knew of such reputation, but this would simply be a matter of proof upon the issue of knowledge of character of Roberts. In order to entitle the defendant to have the judgment reversed in this case, the testimony must be such that the jury could, in the proper exercise of their functions, have found that Johnson knew of the recklessness of Roberts, and, if it falls short of this measure of certainty, then it is insufficient to authorize the court to reverse on account of the charge in question.

It would be absurd to say that Johnson might prove the general reputation of Roberts as a conductor in order to fix liability on the part of the Railroad Company, but that, having made this proof, he is chargeable with notice of that general reputation to the same extent as the defendant, and therefore could not recover. This would make the evidence of his right to recover destructive of the very cause of action that it was introduced to sustain.

The facts showed that Johnson did not know of the reputation of Roberts, nor of his reckless character, and the proof which was introduced, as shown by the conclusions of fact found by the Court of Civil Appeals, was not sufficient to justify the jury in finding that Johnson had such knowledge.

We answer the first question, that there was no evidence which authorized the court to submit a charge to the jury upon the hypothesis that Johnson knew of Roberts' reckless character as a conductor. It did not matter whether Johnson knew that Roberts would follow him on the train that night or not; for, if he knew that Roberts was to act as conductor upon the second section of that train, it not appearing from the evidence that Johnson knew of Roberts' reckless character, no other verdict could have been rendered under the evidence than that which was rendered by the jury. If, therefore, it be conceded that the court erred in that part of the charge which informed the jury that Johnson could recover if he did not know that Roberts was to follow him on that night, it was an immaterial error, and did not justify a reversal of the judgment of the District Court.

Our conclusion upon this question renders it unnecessary to consider the second question; for the reason stated, that the matter embraced there-

in becomes immaterial by the decision of the question herein considered. We therefore make no answer to the second question embraced in the certificate of dissent..