TEXAS & PACIFIC COAL CO. v. GIBSON.*
(No. 8256.)

(Court of Civil Appeals of Texas. Ft. Worth.
Oct. 30, 1915. Rehearing Denied
Dec. 4, 1915.)

1. MASTER AND SERVANT ⊂⇒258—INJURIES TO SERVANT—ACTIONS—PETITION.
    A petition averring defendant's operation of a narrow gauge railroad at the mouth of a shaft of its coal mine, that the cars were operated by means of a stationary steam engine, that while plaintiff was oiling the shive wheel the engineer in charge without notice negligently and carelessly started the engine, that defendant owed plaintiff the duty to employ a competent and prudent engineer, that the engineer was not prudent but was reckless, and that such negligence was the proximate cause of the injury, is sufficient to sustain a recovery on the ground that defendant was negligent in the employment of an incompetent engineer.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 816–836; Dec. Dig. ⊂⇒ 258.]

2. MASTER AND SERVANT ⊂⇒279—INJURIES TO SERVANT—NEGLIGENCE.
    In a servant's action, evidence held to warrant recovery on the ground that the master was negligent in employing and retaining in employment an incompetent engineer, whose negligence caused the injury.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–975, 978–980; Dec. Dig. ⊂⇒279.]

3. MASTER AND SERVANT ⊂⇒264—INJURIES TO SERVANT—PETITION.
    A petition averring that the defendant master was negligent in employing an incompetent and reckless engineer will support recovery on

evidence showing negligence in retaining such a person in its employ.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861–876; Dec. Dig. ⊂⇒ 264.]

4. MASTER AND SERVANT ⊂⇒279—INJURIES TO SERVANT—ACTIONS—EVIDENCE.
    In a servant's action, evidence held to warrant a finding that the engineer, who started the machine which caused the injury, was negligent.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–975, 978–980; Dec. Dig. ⊂⇒279.]

5. MASTER AND SERVANT ⊂⇒289—INJURIES TO SERVANT—ACTIONS—CONTRIBUTORY NEGLIGENCE.
    Whether a servant injured while oiling a shive wheel of a mine railroad was guilty of contributory negligence held under the evidence for the jury.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. ⊂⇒289.]

6. APPEAL AND ERROR ⊂⇒1062—ISSUES—REFUSAL.
    In an action by a servant injured while oiling a shive wheel of a narrow gauge mine railroad, where the court submitted issues whether the engineer in charge was competent, whether the defendant was negligent in employing an incompetent engineer, whether the shive wheel was stationary when plaintiff began oiling it but was placed in motion while he was so engaged, whether the engineer was guilty of negligence and whether plaintiff was guilty of contributory negligence, the refusal of questions whether there was a safer method of oiling the wheel than that used and whether if plaintiff had undertaken to oil the wheel by a safer method he would have submitted himself to danger of injury, was not error, particularly in view of the definitions of negligence and contributory negligence.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. ⊂⇒ 1062.]

7. APPEAL AND ERROR ⊂⇒843—REVIEW—DETERMINATION.
    Where a judgment can be sustained upon one theory, the determination of whether it may be sustained on another is unnecessary.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3331–3341; Dec. Dig. ⊂⇒ 843.]

Appeal from District Court, Erath County; W. J. Oxford, Judge.

Action by A. J. Gibson against the Texas & Pacific Coal Company. From a judgment for plaintiff, defendant appeals. Affirmed.

John W. Wray, of Ft. Worth, for appellant. J. R. Stubblefield, of Eastland, for appellee.

BUCK, J. The appellee, plaintiff below, alleged in his petition that the defendant was extensively engaged in the mining of coal in shaft No. 1 in Erath county, Tex.; that in the performance of said work it was necessary to remove a great deal of rock, shale, and other waste matter from the said mine; that as a means of facilitating the work the defendant owned and operated a narrow gauge railroad, from the mouth of said shaft to the end of the dump, approximately 300 feet; that the said railroad con-

sisted of ordinary cross-ties, with iron rails spiked thereon, and that cars having four wheels and a body were at the time of the plaintiff's injury being operated on the said railroad; that said cars were operated by means of a stationary engine propelled by steam; that there was a large drum on which was a steel cable, one end of which was attached to the said drum and the other attached to said cars, and a shive wheel which was attached to the said railroad and at the opposite end of said railroad from the stationary engine.

Plaintiff further alleged that he was an employé of defendant at the time of the injury, and while engaged in the operation of the said cars he was permanently injured on account of the negligence of the defendant; that the said injury consisted in the loss of one hand and the first, second, and third fingers on the other hand; that said injuries were inflicted while the plaintiff, without negligence on his part, was engaged in oiling the said shive wheel; that the engineer in charge of said stationary engine, without notice to the plaintiff, negligently and carelessly started the said engine, and placed said car in operation, and thereby injured the plaintiff.

Plaintiff further alleged that defendant owed him the duty "to employ and place in charge of the said engine a capable, competent, cautious, and prudent man; that the engineer, who was employed and placed in charge of said engine by the defendant was not a competent, cautious, or prudent engineer, and was reckless, and in this defendant was guilty of negligence, and the said negligence was the direct and proximate cause of plaintiff's injuries hereinafter complained of."

Defendant pleaded the general denial, special denials, contributory negligence, that if plaintiff was injured it was caused by the negligence of a fellow servant, and assumed risk.

The cause was submitted to the jury on special issues, and the jury found, first, that the engineer employed by the defendant to operate the stationary engine was not a competent engineer; second, that defendant was guilty of negligence in the selection of an incompetent engineer; third, that the shive wheel was not running at the time plaintiff began oiling the same, but that it was placed in motion while he was engaged in oiling it; fourth, that the engineer in charge of the engine was guilty of negligence in placing the machinery in operation under the circumstances and at the time he did; fifth, that plaintiff was not guilty of contributory negligence; and, sixth, that plaintiff was damaged in the sum of $15,000. Upon these findings by the jury the court rendered judgment for plaintiff in the sum of $15,000.

No question is presented as to the character and extent of plaintiff's injuries, nor to the amount of the verdict, if appellant under the facts is liable. Therefore there are presented for our consideration and determination the following questions: (1) Was defendant operating a "railroad" as contemplated under article 6640, Vernon's Sayles' Texas Civil Statutes, so as to make it liable for injuries resulting from the negligence of a fellow servant of the person injured? (2) If question No. 1 should be answered in the negative, are plaintiff's allegations sufficient, in the absence of even a general demurrer to the petition, to sustain a recovery on the ground that defendant was guilty of negligence in the employment of an incompetent engineer? (3) Does the evidence sustain the allegation, if admitted to be sufficient, of such negligence on the part of defendant in employing an incompetent engineer? And (4) does the evidence sustain the allegation of incompetency on the part of the engineer?

[1] If the answers to questions 2, 3, and 4 should be in the affirmative, it then becomes immaterial as to whether or not the defendant was operating a "railroad" in the sense used in article 6640, supra.

In the case of Galveston Rope & Twine Co. v. Burkett, 2 Tex. Civ. App. 308, 21 S. W. 958, the following language is used:

"The first assignment of error is that the court erred in overruling the exception to the petition because of its omission to allege that appellant knew, or by the use of ordinary care could have known, of the incompetency of the servant from whose negligence it is alleged that appellee's injury resulted. The petition alleged that the act of employing a servant was done in a careless and negligent manner, and that in consequence thereof an incompetent servant was taken into appellant's service. This was not an abstract allegation that appellant was guilty of negligence, but a specification of the act complained of, and charged to have been done in a negligent manner. This we think was sufficient. To have alleged that appellant knew, or could have known, of the incompetency of the employé, would have been only a further definition of the negligence charged against it, and it would have been a repetition in other language of what was involved in the averment made."

In Pennsylvania Coal Co. v. Bowen, by the Supreme Court of Alabama, 159 Ala. 165, 49 South. 305, we find the following expression:

"The law is that in order to recover against the master, on account of the employment of incompetent servants, it must be shown that the master knew of the incompetency of said servant, or by the exercise of reasonable diligence could have ascertained that fact. 1 Labatt, Master and Servant, pp. 418, 419, § 193a; Bailey's Master's Liability for Injuries to Servants, pp. 48–50; 26 Cyc. 1298, 1299; First Nat. Bank v. Chandler, 144 Ala. 286, 308, 39 South. 822, 113 Am. St. Rep. 39. It is also laid down, as a general proposition, that the complainant must allege that the master knew of the incompetency, or by the exercise of reasonable care could have known; but it is not necessary that those exact words should be used. Under the general trend of our own and other decisions, we hold that the allegations in this complaint, that the 'defendant violated its duty in this respect and negligently employed,' etc., are a sufficient compliance with this requirement. 26 Cyc. 1393, 1394; Galveston Rope & Twine Co. v. Burkett [2 Tex. Civ. App. 308] 21 S. W. 958."

In Pennsylvania Foundry & Mfg. Co. v. Probst, 114 Va. 264, 76 S. E. 323, the Supreme Court of Appeals of Virginia holds sufficient, even as against special exception, similar allegations. We think the allegations in plaintiff's petition as to this matter are sufficient, especially in the absence of even a general demurrer.

[2] We now come to the question as to whether or not the evidence sustains the allegation of defendant's negligence in employing an engineer who was incompetent to perform the duties with which he was charged, and in passing upon this question, it would seem that we are justified in fixing the date of the engineer's employment by defendant in the capacity of an engineer as of the date of the accident, for though the evidence tends to show that Jackson, the engineer in question, had had some experience in running the engine operating this car, which experience according to different witnesses covered a period ranging from a few days to nine months, yet the evidence shows that immediately prior to this accident said Jackson had been employed in operating a dynamo, and that on the day of the accident he was withdrawn from his regular employment and put in charge of this hoisting engine. Mr. Wylie testified that he was in charge of No. 1 mine at the time of the accident, and that the regular engineer was a man by the name of Dee Lee, and that he (Wylie) had put Jackson in as a substitute that morning; that Jackson had been running the dynamo. E. H. Cunningham, a witness for plaintiff and one of the employés of defendant, testified as follows:

"I have known him (Jackson) something like five years up to the time of Gibson's injury, if I am not mistaken. During that time Jackson had run an engine something like 1½ weeks before he took possession of it the last day of March, 1913. The latter days of March he had another job, and then I wouldn't be positive, but I think the next day he ran the engine was the time he crippled Jack (meaning the plaintiff). I wouldn't be positive, but I think it was the next time he ran the engine after he gave it up, lacking about a day and a half being a month, but he had run it about a week and a half before that, I never heard of his running an engine anywhere else before that."

The plaintiff testified that the railroad was approximately 300 feet long, and that the engineer standing in his place within the engine house and beside the throttle of the engine could have looked out of a window made for the purpose, and could have seen the opposite end of the dump, and if a person had been greasing the shive wheel, could have seen such person. Jackson testified that he had operated this hoisting engine all told for something like nine months prior to the accident, and had worked at this mine for about five years; that he could look up the track from his place at the throttle of the engine and see the shive wheel, and a man oiling the same, and could see a man in charge of the car of slate, and could see any signal that might be given by such a man to run slow or

fast or to start the car. He further testified that during the time that he had operated said engine he never gave the slate man at the end of the dump any signal that he was going to start the cars in motion, nor waited to receive a signal from said slate man; that there were no signals at all used when the engineer was loading the rock and "going to the top." We believe the jury was justified in finding that the defendant was guilty of negligence in employing an engineer who had, according to his own testimony, habitually failed, during prior employments in the same capacity, to look before starting the engine to see whether or not his fellow employé at the end of the dump was in a place of danger, and that such failure on the part of said engineer to keep a lookout, or to give a signal of his intention to start the engine, was negligence. The engineer had been in the employment, according to his own testimony, in this position for a period of some nine months, and his manner of operating the engine was within the knowledge of the defendant company, or by the exercise of ordinary care said defendant company could have acquainted itself with said engineer's habits as to negligence or the lack thereof. In Railway Co. v. Day, 104 Tex. 237, 136 S. W. 435, 34 L. R. A. (N. S.) 111, the Supreme Court, speaking through Judge Ramsey, in answer to certified questions from the Court of Appeals for the Fifth District, used the following language:

"We think it cannot be doubted, under the authorities, that there was evidence tending to show, and which, if credited, would have justified the conclusion, that appellant was negligent in employing and in retaining Milam in its service, and that by such negligence appellee was subjected to the peril and danger of injury by him. It is stated by the Court of Civil Appeals that 'there was no evidence that appellant did or did not make an investigation of Milam's character and fitness before employing him.' Since this was a fact peculiarly within the knowledge of the railway company, its failure to produce such evidence when, if inquiry had been made, the proof was not only readily accessible, but of value to it, might well justify the jury in concluding that no such inquiry had been made. It is well settled in this state that it is the duty of a railway company to use ordinary and reasonable care to inform itself of the character and efficiency of its servants. T. & P. Ry. Co. v. Johnson, 89 Tex. 519, 35 S. W. 1042; Labatt on Master and Servant, § 194. And, if not alone, certainly in connection with other proof, the failure to make such inquiry may well justify a finding of negligence."

[3] But it is argued by appellant that there is no allegation in plaintiff's petition of negligence on the part of defendant in retaining the engineer in question in its employment, but merely in employing him. If the latter allegation be held sufficient, since the date of employment can fairly be held to be date of the accident, we hold that the allegation of negligence arising from the retention of the engineer in the employment of the company becomes unnecessary, and that the rule laid down in the case last cited is applicable to this case, though the allegation of negligence as to this matter be only as to the

employment. We are of the opinion that the evidence justifies the jury in finding in answer to issue No. 2 that the defendant did not exercise ordinary care at the time it employed Will Jackson as an engineer to determine whether or not he was a competent man for the place. Incompetency in a fellow servant denotes the absence of reliability in all that is essential to make up a reasonably safe person, considering the nature of the work and the general safety of those required to associate with a person. Ingram Day Lbr. Co. v. Joh (Miss.) 64 South. 934.

[4] We now come to the question as to whether or not there is evidence to support the finding of the jury that the engineer in charge of the engine was guilty of negligence in starting the engine at the time and under the circumstances that he did start the same. The testimony of the plaintiff is to the effect that on the morning of the accident, and shortly prior thereto, that he and the engineer were out at the end of the track and dump assisting in raising the track and "cribbing" it up, and the engineer brought the oil can up and left it with plaintiff and told him to grease the wheel; that when they got the track raised, the engineer went back towards the engine house and plaintiff told him: "The first cars you send up load them light so I can dump them in the track." That in response to the instruction of the engineer he, plaintiff, started to grease the shive wheel and found the oil hole stopped up with dirt; that he took his knife or a splinter and started to remove the dirt from the oil hole so that he could oil the wheel, and in order to perform his work got astraddle of one of the iron rails, holding the wheel with his left hand and pouring the oil into the hole with his right; that while he was so engaged the engineer started the engine without any signal, and his hands were caught, and he was injured, as alleged in his petition; that he was not looking for the engine to start until he got away, and gave the engineer the signal to start it; that it was required by the company that he oil the wheel and that it could not possibly be oiled except when standing still; that a person could not pour oil into this hole while the wheel was in motion; that he was oiling the wheel in the way he always oiled it; that he had to shake the wheel in order to make it take oil and oftentimes open up this hole in order that the oil might run through. He further testified:

"I suppose the engineer brought the can from his engine room. He came up the dump with it in his hands. When he told me to oil the shive wheel, he and I were standing something like 15 or 20 feet, maybe 30 feet, from the shive wheel. He then had to go something like 275 or 280 feet to the engine room, and I had to take some blocks out from under the rails or between where the ropes were. I pitched these out and the engineer set the oil can down and said, 'When you pitch these out, oil the wheel.' And I started to oil the wheel and had to open the hole to get the dirt out of it. When we stop-

ped to fix the track we always gave a signal before they started up with the first car, of course when the dump was in good shape they went backward and forward without any signals, but when we stopped for anything a little while, they never started a car until they were given a signal, and never in the morning, when we first begin work, started a car without a signal. The signal I was to give the engineer was before a car started."

The evidence shows that the accident occured at the beginning of that day's work. The engineer testified that from where he stood he could see the plaintiff when he was on the dump; that he did not know whether or not the plaintiff could see him as he was in a room, there being a window between him and the plaintiff; that on the occasion of the accident he did not see plaintiff when he started the engine and did not look for him. Enough of the evidence has been cited in our opinion to support the finding of the jury that the engineer was negligent in starting the engine at the time and under the circumstances he did.

[5] We are of the opinion that appellant's seventh assignment, which attacks the verdict of the jury in response to issue No. 4, wherein they found that the plaintiff was not guilty of contributory negligence, cannot be sustained. The plaintiff himself testified, as also did Homer Gower, that the foundation of the dump at the shive wheel was not solid and substantial, and that the débris was disposed to roll from under the feet, and there was a gradual incline of the grade adjacent thereto, making it inconvenient and probably impracticable to grease the wheel from the ground, and we are not able to say that a man in the exercise of ordinary care for his own safety would not have adopted the plan that plaintiff did adopt as to greasing the wheel, especially as the oil was to be applied through this oil hole or duct. Contributory negligence is a question of fact for the jury, unless the act done is in violation of the law, or the facts admit of but one inference. Adams v. Railway Co., 164 S. W. 853.

[6] There are a number of assignments alleging error in the failure of the trial court to submit certain issues tendered by the defendant. But we are of the opinion that such questions were matters of evidence touching the issues of fact to be determined by the jury, rather than the issues themselves. For instance, in the tenth assignment, error is urged to the failure to submit the following question:

"Was there or not a safer method of oiling the wheel than the method used by the plaintiff?"

And under the eleventh assignment:

"If plaintiff had undertaken to oil the wheel by a safer method, if there was one, would he have submitted himself to the danger of the injury?"

We believe that, in view of the court's definitions as to what constitutes negligence and contributory negligence, these several

questions of fact were included in the issues submitted by the court.

[7] Since we are of the opinion that the judgment of the trial court should be sustained upon the ground that the defendant was guilty of negligence in the employment of an incompetent engineer, we are not called upon to decide the question of whether or not the defendant was operating a railroad, or the question whether or not if defendant was operating a railroad, plaintiff was injured while engaged in the operation of the cars. Therefore we will not undertake to determine these questions.

The judgment of the trial court is affirmed.

⟱For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes