E. L. CHEENEY COMPANY and Edmon Lewis Fregia, Appellants,

v.

Walter L. GATES, Jr., Appellee.

No. 21768.

United States Court of Appeals
Fifth Circuit.

June 10, 1965.

Rehearings Denied July 13, 1965.

George A. Weller, Beaumont, Tex., J. C. Zbranek, Liberty, Tex., Marcus & Weller, Beaumont, Tex., for appellant, E. L. Cheeney Co.

Gilbert T. Adams, Adams & Browne, Beaumont, Tex., by Roger Ratliff, Colorado City, Tex., for appellee, Walter L. Gates, Jr.

Before HUTCHESON and BROWN, Circuit Judges, and KILKENNY,* District Judge.

* Of the District of Oregon, sitting by designation.

# 200

**JOHN R. BROWN, Circuit Judge.**

■ Nothing startling, nor for that matter new, is either in or comes out of this diversity automobile collision damage suit in which we are *Erie*-Texas bound. As a matter of Federal Court judicial administration, the excursion proves once again, however, the wisdom of using the F.R.Civ.P. 49(a) mechanism of special interrogatories with a general charge for jury submission. Had they been used, there is a good chance that the jury would have washed out some of the asserted errors on receipt of evidence and as to basic questions of liability, the issues would have been sharply posed for definitive action. As it is, everything was wrapped in the enigma of a general verdict, and all must go back for another round.

■■ The Plaintiff Gates, on a general verdict, against the Company [1] and the asserted employee Fregia [2] obtained a judgment for personal injuries sustained in an intersection collision which occurred about 11:30 p. m. on January 25, 1962, when the Company's pickup truck, then being driven by Fregia, turned left to cross the course of the Plaintiff's oncoming car. The occurrence itself is of little moment for if there ever was a jury case authorizing a finding of negligence in the operation of the truck and lack of contributory negligence on the part of the Plaintiff, this is it. The battle was all over the legal accountability of the Company.[3] Recovery against the Company was sought on two independent theories, the first being the run-of-the-mill respondeat superior, and the second the doctrine of negligent entrustment which, with some built-in hurdles of its own, does overcome the scope of employment problem. Constructed as it was, the general verdict was a favorable finding on either one or both of these theories. If a significant error in the charge was made or an instructed verdict should have been granted on either of the two theories, the mystery, being impenetrable compels a reversal.[4]

■ To prevail on the respondeat superior theory, the Plaintiff had to establish that at the time of the accident Fregia was then engaged in the course of his employment acting for and in the interest of the Company, his employer.[5] If—and the if is a very, very big one—the Plaintiff established this, it was done solely on the basis of a Texas presumption. For the record is absolutely bare of direct evidence that Fregia was doing anything for or on behalf of the Company except, perhaps, to get the truck back to his home from which it ought never to have been removed for this particular personal journey. To the contrary, the

---

1. E. L. Cheeney Company.

2. Edmon Lewis Fregia.

3. Judgment was sought and obtained against Fregia individually, and he also successfully appeals.

4. Travelers' Ins. Co. v. Wilkes, 5 Cir., 1935, 76 F.2d 701, 705; Hearst Corp. v. Cuneo Press, Inc., 7 Cir., 1961, 291 F.2d 714, 717; Rashaw v. Central Vermont Ry., 2 Cir., 1943, 133 F.2d 253, 256; Christian v. Boston & M. R. R., 2 Cir., 1941, 109 F.2d 103, 105.

 For a case in which the theories of liability are, at least in part, mutually contradictory, we reject the idea that under the following cases pressed by the Plaintiff an appellate court may choose between unknowns. Kinser v. Riss & Co., 7 Cir., 1949, 177 F.2d 316; Larsen v. Chicago & N. W. R., 7 Cir., 1948, 171 F.2d 841; Lee v. Pennsylvania R., 2 Cir., 1951, 192 F.2d 226; Louisville & Nashville R. v. Rochelle, 6 Cir., 1958, 252 F.2d 730.

5. This element is quite distinct from the question whether the employer has consented to the use of a company-owned vehicle for a personal mission of an employee. Most frequently that issue arises out of the employee's effort to latch onto the employer's liability insurance policy by obtaining the status of an additional omnibus assured. See, e. g., Employer's Mutual Cas. Co. of Des Moines v. Mosqueda, 5 Cir., 1963, 317 F.2d 609. As discussed later, the issue may also have some bearing on the time of the entrustment under that alternative theory. See note 15, infra.

evidence was uncontradicted that Fregia had no right to use the truck for his personal interest, and that the Company had a positive rule forbidding it. And as though this were not enough, the evidence was also uncontradicted that Fregia and his wife drove in the Company truck from their home to a beer tavern a mile or so distant where they stayed for an hour and a half, perhaps consuming the usual "one or two" beers as a part of their mission to collect from the tavern owner delinquent purchase payments he owed to Fregia's wife, the former owner of the tavern.

The Plaintiff does not undertake to minimize these denials. Indeed, some of them work to his great advantage showing, as they do, that Fregia was and had been for a number of years in the direct employment of the Company. This proof showed also that the pickup truck belonged to the Company, and Fregia was authorized to drive it to and from work and to keep it at his home during nonworking hours.

This set in motion the principle declared in Broaddus v. Long, 1940, 135 Tex. 353, 138 S.W.2d 1057, 1058. There the Court, for Texas, said, "it is the law * * * that [the plaintiff] having proved Broaddus' ownership of this cab, that his servant negligently operated it at the time of this collision, and that such negligence was the proximate cause of his injuries, he proved a prima facie case against Broaddus. We think further that, for Broaddus to escape liability under the above facts, he must prove that the servant was not acting within the scope of his employment at the time of such collision." Besides citing with obvious approval Houston News Co. v. Shavers, Tex.Civ.App., 64 S.W.2d 384, the Court went further and expressly approved the rule stated in American Jurisprudence.[6] Finally, the Court after analyzing the facts concluded that the presumption had not been overcome as a matter of law because "we do not think that such evidence comes from witnesses whom, under the circumstances of this record, the jury was bound to believe." 138 S.W.2d 1057, 1059. The Plaintiff here stresses this latter declaration to argue that the "rebuttal" comes entirely from Fregia and the President of the Company each of whom was an interested party whose testimony the jury was not "bound' to believe."

■■ But other decisions discussing the nature of this presumption as well as some applying it to specific fact situations demonstrate that for Texas the standard is not the mechanically simple one of making every case a jury issue where the "rebuttal" comes wholly from interested parties. The Court in Empire Gas & Fuel Co. v. Muegge, Tex.Com.App. opinion adopted, 1940, 135 Tex. 520, 143 S.W. 2d 763, phrases it this way. "It is settled in this state * * * that such presumption is not evidence but rather a rule of procedure or an 'administrative assumption' which 'vanishes' or is 'put to flight' when positive evidence to the contrary is introduced. * * * The presumption is a true presumption, which has been defined as 'a rule of law laid down by the courts which attaches to facts certain procedural consequences'. McCormick & Ray's Texas Law of Evidence, Sec. 32 p. 48. It places on the party against whom it operates the burden of producing evidence. It is not evidence and when met by rebutting proof is not to be weighed by the jury or treated by the jury as evidence in arriving at a verdict. McCormick & Ray's Texas Law of Evidence, pp. 51, 58,

---

6. "Again, if it is proved that the automobile in question was owned by defendant, and further proved that the driver was in the employment of defendant, a presumption then arises that such driver was within the scope of his employment when the accident occurred.

The burden of proof is then placed on the defendant to prove that at the time of the accident the driver was not acting for him, but was using the machine for his own purposes, or outside the scope of the employment." 5 Am.Jur. Automobiles § 612.

Sections 34, 37; 20 Amer.Jur. pp. 170, 171, Sec. 166." 143 S.W.2d at 767, 768. In Houston News Company v. Shavers, supra, many times expressly approved, Judge, later Justice Alexander for the Court of Civil Appeals described this presumption as "a mere rule of procedure." And, the Court went on, "the presumption vanishes when positive evidence to the contrary is introduced." Judge Alexander then reduced it to terms which all lawyers, certainly those artificers who labor in the courtroom, would understand with pained recollections. "The effect of the rule is to 'smoke out' the defendant and to compel him to disclose the true facts within his knowledge. When, however, he discloses the true facts within his possession and such evidence is positive to the effect that the servant was not engaged in the master's business at the time of the injury, the presumption is nullified and the burden is then upon the plaintiff to produce other evidence or his cause fails." [7] 64 S.W.2d 384, 386.

Translating the problem into practical terms, the Court in Empire Gas & Fuel Co. v. Muegge, supra, recognized a "conflict in the decisions as to the degree and character of the proof necessary to rebut or overcome such presumption." And the Court declared: "By some it is held that the presumption disappears when met by positive proof or substantial proof or by evidence which the jury has the right to believe or by the uncontradicted testimony of the defendant. Others hold that the presumption is not overcome by the testimony of the defendant alone or by the testimony of interested witnesses or by evidence which the jury has the right to disbelieve. * * *" But regardless of the interested or disinterested character of the "rebuttal" witnesses, the Court aligns itself with the "authorities" which are "in almost complete agreement that the presumption is conclusively overcome by clear, positive and undisputed evidence." 143 S.W.2d at 768. Where the "rebuttal" qualitatively meets this standard, a number of Texas cases hold the presumption to have been overcome conclusively by testimony coming wholly from interested parties. Kelly v. Green, Tex.Civ.App., 1956, 296 S.W.2d 576; Mitchell v. Ellis, Tex.Civ. App., 1964, 374 S.W.2d 333; Lumbermen's Lloyds v. Jones, 1954, 153 Tex. 379, 268 S.W.2d 909; Hudiburgh v. Palvic, Tex.Civ.App., 1954, 274 S.W.2d 94; cf. Rigsby v. Pitner, Tex.Civ.App., 1960, 334 S.W.2d 837.

On analyzing the record we think that when the testimony of Fregia, Mrs. Fregia, and E. L. Cheeney is considered together, the evidence is clear, positive and substantially uncontradicted as to some of the essential subsidiary elements, but that it lacks this quality as to at least one inquiry.

The first subsidiary element is the prohibition against use of the Company-owned pickup truck for Fregia's personal business. Fregia's testimony was very emphatic. He acknowledged that he was not supposed to drive the truck except to go to and from home and his place of duty during regular hours (approximately 7:00 a. m. to 4:00 p. m.) or in answer to emergency calls when summoned by his Employer. There was a positive instruction against his personal use of the truck, and this was, so he said, the first time in 11 years of employment that he had disobeyed a positive instruction. Mr. Cheeney, President of the Company, was equally emphatic. The rule was strictly enforced and express consent had to be obtained for the very rare instance in which the Company would permit use by an employee of a Company vehicle. Moreover, the Company had no possible interest in Fregia's (or his wife's) visit to the tavern.

Likewise, there is no evidentiary support for the next subsidiary element which concerns the Plaintiff's theory that

---

7. Quoted with approval Lumbermen's Lloyds v. Jones, 1954, 153 Tex. 379, 268 S.W.2d 909, 912.

the interests of the Company were furthered by allowing Fregia to take the pickup truck home at night since he would have effective means of transportation to go where needed if he were called during off duty hours by telephone or radio. On this theory these Company interests would be served even were the car driven on a personal mission contrary to express prohibition.

The Company was engaged in reworking and servicing oil wells and rigs. Fregia was a mechanic. Fregia's work was ordinarily from 7:00 a. m. until 4:00 p. m. He spent approximately 70% of his working time in the Company shop, the balance where needed in the field. The pickup truck was equipped with a two-way radio (not a mobile telephone). The radio was not effective either for reception or transmission while the car was stopped and the ignition key off. Fregia was subject to call during off duty hours. But he was not required to keep in touch with the Company. If he were needed, he would be called by telephone since the radio in the pickup truck was not on, nor was it expected to be on. Of course, once he was summoned by telephone for an off duty assignment, availability of the pickup truck assured him transportation to the job site as needed, and on such missions, the presence of the radio would afford effective communication. But the short of it is the pickup was assigned him as a means of transportation, not as a means of communication. The radio was to permit communication while the truck was being used in going to and from his home, the shop, or other job sites either during regular duty hours or off duty hours when called by telephone.

We think the same is true as to the next subsidiary element—the immediate purpose of the visit to the Country Tavern. Mrs. Fregia testified that her husband was at home when she arrived from her work earlier that evening. At about 9:00 p. m. she and her husband, driving the pickup truck, went to the Country Tavern which she formerly owned and which she had sold to Oliver McClendon. The purpose of this call was to collect past due purchase payments owed by McClendon. She and her husband spent about two hours or so in the tavern talking to Mr. McClendon who was also a friend. At no time between arrival at and departure from the tavern did her husband leave the tavern. She and her husband, in the pickup, left about 11:00 or 11:30 p. m. intending to return from the tavern to their home when the collision intervened. On the trip to and from home and the tavern, the two-way radio was not on. Strongly corroborating the prohibitory rule on personal use, this was the first occasion she had ever had to ride with her husband in the Company truck. Likewise, as to the time of the trip to the tavern that evening, the length of the stay, the purpose of the journey, Fregia's court testimony echoed without equivocation that of his wife, and as to the prohibitory rule, that of President Cheeney. But his credibility was attacked by a prior inconsistent statement on the very point of what he had been doing that evening. Highway patrolmen offered as witnesses for the Plaintiff testified that in response to their investigative inquiries, Fregia stated that he had been working in an oilfield south of Dayton.[8]

8. Patrolman Stewart:
"Q. Where did he say he had come from?
"A. He said he had been working in the south Dayton oilfield.
"Q. What did he say he had been doing in the south Dayton oilfield? * * *
"Q. Did he tell you any particular lease that he had been working on?
"A. No, sir.

"Q. Just that he had been working on a well south of Dayton?
"A. Yes, sir. * * *
"Q. Well, what did he say, that he had come direct from the wells, or did he stop on the way * * *
"The Witness: "Stopped at the Country Tavern."
Patrolman Touchstone:
"Q. Did you hear Mr. Fregia talk to [Patrolman] Stewart about where he had

Additional doubt was cast on Fregia's explanation by a similar attack on the credibility of the tavern owner McClendon who testified on behalf of Fregia. He confirmed the presence of the Fregias at the tavern between 9:00–9:30 to 11:-00–11:30 p. m. and the purpose of Mrs. Fregia to obtain the payments from him. But his courtroom testimony that this was Fregia's first trip to the tavern that day was contradicted by his prior written statement which spoke of an earlier visit.[9]

 Were this the ordinary situation where a plaintiff had to affirmatively prove the element of scope of employment, Fregia's prior statement inconsistent with his court testimony would affect his credibility,[10] but the inconsistent words would not carry the day on agency. For the fact of agency, where denied, may not be established by the declarations of the purported agent.[11] But it is not that simple. The presumption alone suffices until it is rebutted by clear, positive, uncontradicted testimony. Here the jury was not required to treat Fregia's explanation as positive, clear and uncontradicted. Conceding that the prior inconsistent words may not be converted into proof of the fact—i. e., he was returning from a well south of Dayton—his explanation that he had gone straight from home to the tavern was now undermined both in specific terms and through those same words by impeaching of his general credibility. Trustworthiness of Fregia's explanation was critical. For President Cheeney acknowledged that if on the night of the accident Fregia had performed services at some rig and was on his way home, then he was performing a service for the Company.[12] Faced with a presumption intended to "smoke out" the true facts, the Company contented itself with an equivocal afterthought at the tail end of the evidence.[13]

 On this record—and the emphasis is on this record—we conclude the evidence required jury submission. In other words, while the "rebuttal" may not have been adequate to conclusively overcome the presumption as a matter of law, it was sufficient to require the jury to assay the essential ingredient of the Plaintiff's case that Fregia was engaged in the scope of the Company's employment while driving the pickup. It is at this point that the trial Court's failure to exploit the flexible advantages of spe-

---

been and where he was coming from and where he was going?
"* * * *
"A. * * * Mr. Fregia said that he had been out to check a well south of Dayton. * * *
"* * * *
"A. No, * * * he said he had been out to check a well at Dayton."

9. "About 9:00 or 9:30 Edmon Fregia came in and stayed about an hour and a half. He drank two beers then that I knew of. He had been in earlier about 5:00 o'clock and said he had either been to a rig working or was going to a rig to do some work."

10. Because it was obviously admissible for impeachment of the witness Fregia, we reject the Company's specific complaint of error in its admission. The Company made no request that this testimony be limited against it to impeachment purposes only.

11. Empire Gas & Fuel Co. v. Muegge, Tex. Com.App. opinion adopted, 1940, 135 Tex. 520, 143 S.W.2d 763, 769, citing with approval Lewis v. J. P. Word Transfer Co., Tex.Civ.App.1938, 119 S.W.2d 106; see also Webb-North Motor Co. v. Ross, Tex.Civ.App.1931, 42 S.W.2d 1086, writ dismissed.

12. "Q. And so, if on the night in question, he had performed services at some rig someplace and was on his way home, then he was performing a service for you, wasn't he?
"A. If he had been doing that, yes, sir."

13. To Mr. Cheeney:
"Q. Did you have a rig actually running or doing anything else in Dayton or Liberty that night?
"A. No, sir."

cial interrogatories, F.R.Civ.P. 49(a),[14] may have unavoidably brought about a waste of judicial energy. There is a strong indication in this record in connection with the jury's request for additional instructions—reflected here and there by like speculations in counsel's briefs—that the jury based its general verdict for the Plaintiffs on the alternative theory of negligent entrustment. This, of course, implicitly excluded respondeat superior on the theory of scope of employment. Had the jury, in response to one or a few very simple questions, credited Fregia's story that the pickup was used solely to transport him and his wife from their home about 9:00 o'clock to the Country Tavern to collect money from McClendon, that would have made it possible to confine review of the case to the negligent entrustment theory. There is a great possibility that the evidential rulings which confessedly might have had an inflammatory effect under a respondeat superior theory could have had no real adverse effect under an entrustment approach. And more so, with respect to the negligent entrustment theory, it would enable the trial Court and on review, this Court, to pinpoint critical subsidiary issues upon which the Courts of Texas are not altogether clear and which might well have washed out by a precise factual determination.[15] After having read the jury charge carefully, we can also say with conviction that it would have assured a clearer understanding of the principal issues and theories. Trying to wrap up these mutually exclusive theories in a single general verdict, the charge was unavoidably awkward and inescapably repetitious.

The examination of the other asserted errors persuades us that at least one is substantial and requires a reversal.

Over objection, the Court allowed the Plaintiff to introduce pretrial interrogatories Nos. 1 and 3 (with answers) addressed to the Defendant Fregia. In response to No. 1, he answered that "On September the 26th, 1960, in cause No. 10350 in the county court of Liberty County, the defendant was charged with driving while intoxicated." No. 3 inquired of the time, place and date of any charge of reckless driving. Fregia answered that "On September the 25th, 1961 * * * in the justice of peace court No. 1, Liberty County, Texas, Ed-

14. We have many times extolled this device. See Nesmith v. Alford, 5 Cir., 1963, 318 F.2d 110, 125 n. 30; Duke v. Sun Oil Co., 5 Cir., 1963, 320 F.2d 853, 865; Ford Motor Co. v. Mathis, 5 Cir., 1963, 322 F.2d 267, 271.

15. See, e. g., the issue as to the *time* of the entrustment of the automobile. (See note 5, supra) Based on a literal reading of the following cases, the Company insists that for it to have been guilty of negligent entrustment, it must have consented to Fregia's driving of the car on this mission for his own personal use, a condition which could not be fulfilled if its evidence were credited that this violated Company instructions. Vaughn v. Watkins, Tex.Civ.App., 1961, 344 S.W.2d 902; Farney v. Herr, Tex.Civ.App., 1962, 358 S.W.2d 758; Sweeney v. United Core, Inc., Tex.Civ.App., 1962, 359 S.W.2d 126; Gordon v. Texas & Pac. Mercantile & Mfg. Co., Tex.Civ.App., 1916, 190 S.W. 748. The Plaintiff, on the other hand, stressing conceptual theories urges that liability is imposed because the Company entrusts the car to a driver known to be reckless, incompetent or to drive while intoxicated regardless of the purpose of a particular trip, either business or pleasure. See Spratling v. Butler, 1951, 150 Tex. 369, 240 S.W.2d 1016; Mundy v. Pirie-Slaughter Motor Co., 1947, 146 Tex. 314, 206 S.W.2d 587; Seinsheimer v. Burkhart, 1939, 132 Tex. 336, 122 S.W. 2d 1063; Frontier Theatre v. Whisenant, Tex.Civ.App., 1956, 291 S.W.2d 395. If the trial Court were in doubt about the current or probable Texas law, it could frame questions inquiring as to all likely relevant times. That is the beauty of special interrogatories under F.R.Civ. P. 49(a). See, e. g., Fall v. Esso Standard Oil Co., 5 Cir., 1961, 297 F.2d 411, n. 7, cert. denied, 371 U.S. 814, 83 S.Ct. 24, 9 L.Ed.2d 55. Three years later the Supreme Court held a claim for death due to unseaworthiness did not survive under the Jones Act, 46 U.S.C.A. § 688. Gillespie v. United States Steel Corp., 1964, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed. 2d 199.

mon Lewis Fregia pleaded guilty to a charge of reckless driving. This was done pursuant to an arrangement reducing the charge of driving while intoxicated mentioned in interrogatory No. 1 above."

Our inquiry has been greatly simplified by the recent decision of the Supreme Court of Texas in Compton v. Jay, 1965, Tex., 389 S.W.2d 639, reversing, Tex. Civ.App., 379 S.W.2d 933. Of course, as a mere charge of driving while intoxicated, not a conviction and with the subsequent conviction on plea of guilty being to a misdemeanor charge of reckless driving, this evidence was not offered or received for impeachment purposes. It was offered and received as substantive proof of the contention raised by the evidence on the trial if not formally by the pleadings, F.R.Civ.P. 15(b), that Fregia was, and was known to be, an incompetent driver because he frequently drove while intoxicated as he was at the time of this incident.

 In proving a Texas-based theory of driver incompetence arising out of a history of repeated incidents of driving while intoxicated, Texas holds that convictions, even of felony charges, of driving while intoxicated are not admissible. In Compton the Court, reaching the conclusion that the history of frequently driving while drunk may not be established by isolated instances reflected in awesome form by judicial convictions, approves the rule stated in Southern Traction Co. v. Kirksey, Tex.Civ.App. 1920, 222 S.W. 702, no writ history. "We think the fact that a person was in the habit of getting drunk, and while in such condition driving recklessly upon public highways * * * would be a matter for the proper consideration of a jury * * * and we think that his habit in this regard could be proven by general reputation. *We do not think it would be permissible to prove particular or isolat-*

*ed instances as to his reckless driving while drunk.*" (Emphasis by the Supreme Court of Texas). 389 S.W.2d at 643.

 For all practical purposes, we think the underlying theory of a history of driving while intoxicated presented in the Compton case is substantially the equivalent of a negligent entrustment claim. As the Texas claim and the method of establishing it are so intertwined, we think the same ruling ought to be made by the Federal Court insofar as admissibility is concerned whether it is *Erie*-bound or not. F.R.Civ.P. 43(a); cf. Monarch, Ins. Co. of Ohio v. Spach, 5 Cir., 1960, 281 F.2d 401.

 Since proof of specific instances through a conviction for felony D.W.I. is not permitted, it is plain that it was error to receive evidence of a mere charge.[16] The plaintiff urges two grounds for our disregarding this as error. The first is that similar testimony was elicited by counsel for the Defendant in the cross examination of witnesses and in the course of direct examination of Fregia himself at a later stage. The second is that the Defendants insisted that proof of known incompetence had to be made by evidence of specific instances so if this was error, it was plainly invited. As to the first, this testimony was elicited after the Court, over vigorous objection, had admitted the general reputation testimony from the highway patrolman. Counsel were simply trying to make the best of a situation brought about by the Court's ruling. As to the second, counsel were entitled to object and they did so plainly. The objection was certainly not waived simply because it might have been inconsistent with other contentions being made, albeit unsuccessfully.

 Of course the upshot of this is that this ruling, while requiring a re-

---

16. Cf. Quesada v. Graham Ice Cream Co., Tex.Civ.App., 1947, 207 S.W.2d 120, no writ history; Peek v. Parker, Tex.Civ. App., 1948, 210 S.W.2d 619, no writ history: Condra Funeral Home v. Rollin, 1960, 158 Tex. 478, 314 S.W.2d 277; Isaacs v. Plains Transport Co., 1963, Tex., 367 S.W.2d 152.

versal and remand, does in effect approve the trial Court's receipt of reputation evidence from the highway patrolmen concerning Fregia's general reputation for driving while intoxicated.[17] Where the basis of the negligent entrustment theory is incompetence from repeated driving while intoxicated, this must be established by general reputation evidence, not proof of isolated instances, although for other types of driver incompetence, specific prior instances would certainly be proper.[18]

■ Since habitual driving while intoxicated is provable by reputation evidence only, it follows that we reject the contention that the Court should have instructed a verdict on the negligent entrustment theory. There was evidence,[19] whatever its weaknesses might have been, sufficient to make this a jury issue whatever the deficiencies might have been with respect to other types of driver incompetence.

■■ The result is that the case has to be reversed and remanded for a new trial. We would emphasize again what we have stated many times that with respect to each of these two distinctive theories, the sufficiency of the evidence on the new trial is to be assayed initially by the District Judge on the basis of the evidence there produced, not a matching item by item with the evidence presented in this record. There are too many variables for this decision to be a forecast that either one or both of these theories will present jury issues on the new trial. See, Duke v. Sun Oil Co., 5 Cir., 1963, 320 F.2d 853, 866; Delta Engineering Corp. v. Scott, 5 Cir., 1963, 322

F.2d 11, 20; Steinhort v. Commissioner of Internal Revenue, 5 Cir., 1964, 335 F. 2d 496, 506; Garrett v. American Airlines, 5 Cir., 1964, 332 F.2d 939, 944; Vandercook & Son, Inc. v. Thorpe, 5 Cir., 1965, 344 F.2d 930 [April 19, 1965].

Reversed and remanded.

---

17. We therefore reject the Appellants' complaint of errors on this ground.

18. See, e. g., Union Transports, Inc. v. Braum, Tex.Civ.App., 1958, 318 S.W.2d 927, no writ history; McIntire v. Sellers, Tex.Civ.App., 1958, 311 S.W.2d 886, error refused n. r. e.; Allen v. Bland, Tex. Civ.App., 1914, 168 S.W. 35, error refused. For non-drinking incompetence, we have doubt (but do not decide) that the old fellow servant cases, Missouri, K. & T. Ry. Co. of Tex. v. Day, 1911, 104 Tex. 237, 136 S.W. 435, 34 L.R.A.,

N.S., 111; Tex. & Pac. Ry. v. Johnson, 1896, 89 Tex. 519, 35 S.W. 1042, so heavily pressed by the Plaintiff, would permit general reputation to establish both the fact of specific habitual recklessness and knowledge by the entrustor.

19. The testimony of at least one of the witnesses stated a general reputation in the community. We need not pass at this moment on whether that of the other reputation witnesses was in proper form or content.